FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

WILFREDO LOPEZ,
  *Defendant-Appellant.*

No. 19-10017

D.C. No.
17-cr-00053-1

OPINION

On Appeal from the United States District Court
for the District of Guam
Tydingco-Gatewood, Chief Judge, Presiding

Argued and Submitted October 20, 2020
Honolulu, Hawaii

Filed July 6, 2021

Before: J. Clifford Wallace, Carlos T. Bea, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bea
Partial Dissent by Judge Bennett

**SUMMARY**[*]

---

**Criminal Law**

The panel affirmed the district court's judgment in a case in which Wilfredo Lopez was convicted of attempt to entice a minor to engage in prohibited sexual activity (18 U.S.C. § 2422(b)) and attempt to transfer obscenity to a minor under sixteen years of age (18 U.S.C. § 1470).

Lopez, who served as a member of the U.S. Army in the Territory of Guam, worked at Andersen Air Force Base, a federal enclave within the special maritime and territorial jurisdiction of the United States, but lived off-base in territory subject to both federal law and the laws of Guam.

The panel held that the district court, which admitted into evidence edited video clips of Lopez's post-arrest interrogation, abused its discretion and violated Fed. R. Evid. 106 (the rule of completeness) by categorically excluding the entirety of the remaining interrogation footage as inadmissible hearsay despite the risk that the Government's selective editing would mislead the jury. The panel concluded, however, that the error was harmless.

The panel held that it was not error, let alone plain error, for the district court to enter a judgment of conviction as to the Section 2422(b) attempted enticement charge on this record. Lopez asked this court to interpret Section 2422(b) as requiring the Government to charge a predicate offense

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and to prove Guam would have had jurisdiction to prosecute him for said predicate offense. As a matter of first impression, the panel held that Lopez's reading of Section 2422(b) is inconsistent with the statute's text and how the statute has been interpreted. The panel held that Section 2422(b) does not require the Government to allege a specific predicate offense or to prove that the relevant court would have jurisdiction over the defendant for the commission of such offense, so long as the Government proved the defendant's sexual conduct would have constituted "*a criminal offense*" under the laws of an applicable territorial jurisdiction. The panel concluded that under this reading of Section 2422(b), the Government presented sufficient evidence to allow the jury to conclude Lopez attempted to entice "Brit" to engage in sexual conduct that is criminal in Guam.

Lopez relied on his reading of Section 2422(b) as requiring a specific predicate offense to argue that the district court violated his due process rights by failing to instruct on the elements of the Guam criminal sexual penetration statute cited in the indictment. Reviewing for plain error, the panel concluded that, although the district court should have instructed the jury on the applicable "laws of Guam," Lopez cannot meet his burden of establishing the error affected his substantial rights. Rejecting again Lopez's core argument that Section 2422(b) requires the indictment and proof of a specific predicate offense, the panel held that the district court nevertheless erred in failing to define the "laws of Guam" against which Lopez's proposed sexual conduct was to be evaluated. The panel did not need to decide whether the error was plain or seriously undermined the integrity or reputation of judicial proceedings because there is no question that Lopez cannot meet his burden of demonstrating prejudice to his substantial rights, as Lopez

failed to identify a reasonable probability that the jury would have come to a different decision had the district court instructed that 9 G.C.A. §§ 13.10, 13.60(a), and 25.15(a)(1) criminalize attempts to engage in sexual penetration of a minor under fourteen years of age.

The panel held that there was no error, let alone plain error, in the district court's denial of Lopez's motions for acquittal under Fed. R. Evid. 29 and entry of judgment of conviction on the charge under Section 1470 for attempted transfer of obscenity to a minor under sixteen. The panel wrote that the indictment did not charge completed transfer of obscenity rather than an attempt. The panel wrote that Lopez waived objections to the jury instructions and jury verdict form as to the Section 1470 charge.

Dissenting in part, Judge Bennett dissented from the Majority's affirmance of Lopez's conviction for attempted enticement of a minor in violation of Section 2422(b). He wrote that Lopez could not have been charged with or committed First Degree Criminal Sexual Conduct in violation of 9 G.C.A. § 25.15(a)(1) as the predicate for his Section 2422(b) violation, because the sexual activity he proposed was to take place on Anderson Air Force Base, a place within the Special Maritime and Territorial Jurisdiction of the United States, and that crime is not assimilated under the Assimilative Crime Act, 18 U.S.C. § 13. Judge Bennett also wrote that by *sua sponte* amending the indictment on appeal, to find that the government had proven a crime with which the grand jury had never charged Lopez, the Majority usurped the function of the grand jury, in violation of the Fifth Amendment.

**COUNSEL**

Joshua D. Weiss (argued), Deputy Federal Public Defender; Cuauhtemoc Ortega, Interim Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Defendant-Appellant.

Rosetta L. San Nicolas (argued), Assistant United States Attorney; Shawn N. Anderson, United States Attorney; United States Attorney's Office, Hagatna, Guam; for Plaintiff-Appellee.

**OPINION**

BEA, Circuit Judge:

Wilfredo Lopez was convicted in the U.S. District Court for the District of Guam of an attempt to entice a minor to engage in prohibited sexual activity and an attempt to transfer obscenity to a minor under sixteen years of age in violation of 18 U.S.C. §§ 2422(b) and 1470. On appeal, Lopez argues the district court erred by admitting into evidence edited video clips of his post-arrest interrogation, thereby creating the misleading impression that Lopez confessed to key elements of the charges, and further erred by denying his trial motions for acquittal under Federal Rule of Criminal Procedure 29. For the following reasons, we reject Lopez's claim of prejudicial error, deny relief with respect to additional contentions that the district court committed plain error, and affirm the judgment of conviction.

## I.  BACKGROUND

Wilfredo Lopez served as a member of the U.S. Army in the Territory of Guam.  Lopez worked at Andersen Air Force Base (AAFB), a federal enclave within the special maritime and territorial jurisdiction of the United States, but lived off-base in territory subject to both federal law and the laws of Guam.

In November 2017, the U.S. Air Force Office of Special Investigations (OSI) identified Lopez as a potential child predator.  An OSI agent had posted an advertisement on a classifieds website in which he posed as a thirteen-year-old girl named "Brit" seeking friends among "other mil brats" living on-base.  Lopez responded to the advertisement under the alias "Chris Bain" with an email that invited "Brit" to "chill by the lookout on base" and "do whatever if you know what I mean."  When "Brit" replied that she was thirteen years old, Lopez responded "I'm 29, I can get in trouble for this."  Nevertheless, Lopez continued to communicate with "Brit" by email, asked for her phone number, and offered to message her using a Facebook account he operated under the alias "Blake Johnson."

In the email exchanges that followed, Lopez repeatedly asked "Brit" to do "naughty things" and offered to "teach [her] how to kiss, have sex, suck a dick."  Lopez escalated the conversation by sending "Brit" a photograph of his erect penis and requesting nude photographs in return.  "Brit" responded with photographs of a female law enforcement agent that appeared to depict a teenage girl in a sweater and in a dress.  Lopez then sent "Brit" a second photograph of his erect penis and a video depicting the same.  All told, Lopez asked to meet "Brit" on four separate occasions at different locations within AAFB.  The first and second invitation involved proposed meetings at the Base Exchange

and at an on-base Burger King, neither of which materialized. Lopez then proposed meeting "Brit" at the on-base library. Lopez appeared at the library, waited for some time, and left when "Brit" failed to arrive. Finally, Lopez arranged to meet "Brit" at her supposed on-base residence. OSI agents arrested Lopez when he arrived at the agreed-upon location.

After his arrest, Lopez consented to a video-recorded interview with two OSI agents and a special agent from the Federal Bureau of Investigation. During the eighty-minute interrogation, Lopez admitted to communicating online with a person claiming to be an underage girl. However, Lopez maintained that he knew "Brit" was an undercover agent because of the suspicious timing and content of the messages sent from her account. Lopez noted, for example, that many of the messages were sent during the middle of the day when school-aged girls would be in class and lack access to email. Lopez also described in some detail the process by which he checked the photographs received from "Brit" for evidence of law enforcement involvement. When asked why he continued the email and text message exchanges after "Brit" told him she was underage, Lopez claimed that he hoped to obtain a discharge from the military to avoid the automatic deduction of child support and alimony payments from his military wages for the benefit of his estranged wife.

In December 2017, a grand jury in the U.S. District Court for the District of Guam indicted Lopez on two counts of sex crimes against children. The first count alleged Lopez violated 18 U.S.C. § 2422(b) by an attempt to entice a minor "to engage in sexual activity for which a person can be charged with a criminal offense, to wit: First Degree Criminal Sexual Conduct, in violation of 9 [G.C.A.] § 25.15(a)(1), all in violation of Title 18, United States Code,

Sections 2422(b) and 2."   The Guam statute cited in the indictment punishes the sexual penetration of a minor under fourteen years of age as a first-degree felony.   Notably, Guam law also punishes an attempt to the same grade and degree as a completed offense.  9 G.C.A. §§ 13.10, 13.60(a). The second count alleged Lopez violated 18 U.S.C. § 1470 by an attempt to transfer obscene materials to a minor under sixteen years of age.

At a pretrial hearing, the Government moved to introduce into evidence eleven video clips of the post-arrest interrogation in which Lopez appeared to confess he believed "Brit" was an underage girl.  With few exceptions, the video clips were about ten seconds long, omitted the agents' questions, and presented only portions of Lopez's complete statements.  Lopez immediately objected on the ground that the rule of completeness codified in Federal Rule of Evidence 106 required either excluding the clips or admitting the entire recording.  The district court reserved decision and invited written motions from Lopez and the Government.  The Government subsequently filed a motion *in limine* arguing that, although prosecutors could introduce the video clips into evidence as admissions by a party opponent, the hearsay bar prohibited Lopez from introducing additional footage of the interrogation because the footage contained self-serving statements about his conduct and good character.

The district court considered the motion *in limine* prior to jury selection on the morning of trial.  Lopez renewed his objection that the video recording should be admitted in full or not at all.  Lopez explained through counsel that, although he believed that the Ninth Circuit precedents cited by the Government appeared to cut against his position, the Federal Rules of Evidence are nevertheless best read to require his

requested ruling.  The court overruled Lopez's objection and admitted into evidence the video clips proffered by the Government after concluding that they were not misleading and that the additional footage was inadmissible hearsay.

The case proceeded to trial.  At the close of the Government's evidence, Lopez moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Lopez predicated his Rule 29 motion exclusively on the argument that no reasonable jury could conclude Lopez believed "Brit" was an underage girl as required by the *mens rea* element of both charged offenses.  The district court summarily denied the motion.

Lopez then took the stand in his own defense to testify that he believed "Brit" was a law enforcement agent all along.  Lopez claimed to have spotted the ruse because of his familiarity with the tactics of sex offender sting operations and because the timing of the messages was inconsistent with the schedule of a school-aged girl.  Lopez claimed he continued the conversation only because he sought discharge from the military to circumvent the garnishment of his wages for child support and alimony payments.  Lopez further explained that the clips presented by the Government inaccurately portrayed the lengthy post-arrest interrogation by omitting footage in which he repeatedly denied believing "Brit" was underage.  After the defense rested, Lopez renewed his Rule 29 motion on the same basis as the original motion.  The district court found the record contained sufficient evidence to support conviction, denied the motion once again, and proceeded to instruct the jury using a written script agreed upon by both parties.

The jury returned a verdict of guilty on both counts.  The court sentenced Lopez to concurrent 120-month sentences to be followed by 36 months of supervised release, including

special conditions of supervised release, as well as registration under the terms of the Sex Offender Registration and Notification Act.  Lopez timely appealed.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.  DISCUSSION

On appeal, Lopez argues the district court prejudiced his defense by admitting into evidence isolated excerpts of the post-arrest interrogation recording and denying his motion to introduce the remaining footage.  Lopez also challenges the evidence and jury instructions supporting his attempt conviction pursuant to 18 U.S.C. § 2422(b) as well as the indictment, jury instructions, and jury verdict form supporting his attempt conviction pursuant to 18 U.S.C. § 1470 on several theories never raised below.  We consider each argument in turn under the applicable standard of review.

### A.  Evidentiary Challenge

Lopez challenges his convictions on the ground that the district court violated Federal Rule of Evidence 106 by allowing the Government to introduce excerpts of the recorded post-arrest interrogation while excluding the remaining interrogation footage as inadmissible hearsay.  We review challenged evidentiary rulings for an abuse of discretion.  *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014).  We will not reverse a conviction on account of trial error if the Government shows the erroneous decision

more likely than not had no material impact on the verdict. *United States v. Bailey*, 696 F.3d 794, 803 (9th Cir. 2012).[1]

We hold the district court abused its discretion and violated Rule 106 by categorically excluding the entirety of the remaining interrogation footage as inadmissible hearsay despite the risk that the Government's selective editing of the interrogation footage would mislead the jury. However, we agree with the Government that the district court's evidentiary ruling was harmless error.

## 1. *The Rule of Completeness—Rule 106*

This is not the first case in which we have addressed the intersection of Federal Rule of Evidence 106 and the bar to the admission of hearsay evidence codified in Federal Rule of Evidence 802. In *United States v. Collicott*, 92 F.3d 973 (9th Cir. 1996), we explained that the rule of completeness codified in Rule 106 renders additional portions of a complete document or recording relevant when the opposing party distorts the meaning of the document or recording by introducing misleading excerpts into evidence. *Id.* at 983 (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172

---

[1] The Government argues that Lopez withdrew his evidentiary objection by failing to file a written response to the Government's motion *in limine* and by acknowledging contrary circuit precedent. We reject these contentions. Defense counsel objected to the Government's initial motion to introduce the excerpts of the interrogation recording. Counsel renewed the objection prior to the district court's ruling on the Government's written motion while candidly acknowledging potential weaknesses in his argument. Timely and specific oral objections are sufficient to preserve an evidentiary ruling for appellate review. *Cf. United States v. Alvirez*, 831 F.3d 1115, 1122 (9th Cir. 2016) ("When the district court judge makes a definitive ruling admitting evidence, there is no need to renew the objection to preserve the claimed error." (citation and quotation marks omitted)).

(1988)).   At the same time, we also held that the rule of completeness does not compel the admission of inadmissible hearsay evidence simply because such evidence is relevant to the case.  *Id.*

When Rule 106 and Rule 802 collide, the critical inquiry for the trial court is the purpose for which the evidence is offered.  Portions of a document or recording are admissible under Rule 106 notwithstanding the bar on hearsay evidence when offered "to correct a misleading impression in the edited statement" introduced by an opposing party.  *Vallejos*, 742 F.3d at 905 (citation and quotation marks omitted).  In the interrogation context, for example, we have held that Rule 106 provides for the admission of additional portions of a defendant's statement when the prosecution offers a redacted version that "distorts the meaning of the statement," "excludes information substantially exculpatory of the declarant," or "excludes portions of a statement that are . . . explanatory of [or] relevant to the admitted passages." *United States v. Dorrell*, 758 F.2d 427, 435 (9th Cir. 1985) (citations and quotation marks omitted).   By contrast, hearsay evidence is evidence offered "to prove the truth of the matter asserted."  Fed. R. Evid. 801(c)(2).  There is no conflict between evidence introduced under the rule of completeness and the bar on inadmissible hearsay because the former serves the purpose of correcting a distortion created by an opposing party's misleading proffer of part of a document or recording, while the latter serves the purpose of barring introduction of hearsay evidence proffered for its truth.

The district court abused its discretion by categorically excluding the entirety of the remaining interrogation footage as inadmissible hearsay.  The first step in the district court's error was the erroneous conclusion that the Government's

selectively edited excerpts accurately presented the content of Lopez's statements. On a fair review of the interrogation recording, it should have been apparent that the excerpts risked misleading the jury by making it seem as though Lopez confessed during interrogation to believing "Brit" was underage when, in reality, the full recording conveys a different impression.

For example, one clip shown at trial depicts an isolated moment in which Lopez stated: "Um, I was just bored at first, and was on Gmail, and that's when she told me she was 15, [sic] and I was like oh shit." However, the Government's editing truncated Lopez's explanation that he believed the "Brit" persona was a scam:

> *Um, I was just bored at first, and was on Gmail, and that's when she told me she was 15, and I was like oh shit*, but then that's when the thing started happening in my life and I was like you know what, this can get me into trouble, and then I knew that [the "Brit" persona] was a scam from the beginning.

In another clip, the Government presented Lopez's affirmative answer to an agent's statement "You're 29. 29 and a 13-year-old." as if it were an admission. In fact, the exchange took place during a colloquy in which Lopez attempted to explain why he believed "Brit" was a law enforcement agent:

> Lopez: If it was a regular 13 year-old, that 13 year-old girl would not keep messaging a 29 year-old guy, especially calling him the "boyfriend" and herself "girlfriend," when do you see that? You don't see that at all.

> Agent:  Yea, that's crazy right?
>
> Lopez:  So I already know.
>
> Agent:  *How old are you?*
>
> Lopez:  *I'm 29.*
>
> Agent:  *You're 29.  29 and a 13-year-old.*
>
> Lopez:  *Yeah.*  So from there I was like, ok, it's someone, that's watching me, and then that's when you guys came out and then I was like ok, that's the OSI.

Yet another clip followed the same pattern by presenting Lopez in what appears to be an agitated state admitting "I wasn't talking to you guys, I was talking to a minor."  In context, Lopez was cajoling the interrogating agents to expel him from the military:

> Lopez:  Come on now, sir, can you just get me out of the army?
>
> Agent:  [Laughs] Listen, my job isn't to get people out of the army, my job is to, to investigate federal crimes.  So, um. . .
>
> Lopez:  *No, I wasn't talking to you guys, I was talking to a minor.*
>
> Agent:  [Pause] I mean, in your frame of mind, what you attempted to do, what were you attempting to do?

Lopez:  Get kicked out of the army.

Agent:  Ok.  So, were you or were you not trying to have sex with a 13 year-old?

Lopez:  No, I promise you that.  I wasn't.

The potentially misleading impact of the Government's clips means they should not, in fairness, have been considered in isolation from Lopez's related statements at other points in the interrogation.

This case is a far cry from *Dorrell* and *Vallejos*, in which we found the excluded portions of the defendants' confessions fell outside the ambit of Rule 106 because they did not serve to correct misapprehensions created by the partial introduction of a document or recording.  In *Dorrell*, we affirmed the exclusion of portions of a confession in which the defendant explained the political and religious motivations behind his attempted sabotage of a missile factory.  Removing these details "did not change the meaning of the portions of his confession submitted to the jury" because his expressions of ideological zeal during the confession were presented as justifications for his criminal conduct, not to contradict evidence of the conduct to which he had confessed.  758 F.2d at 435.  Similarly, in *Vallejos*, we approved the redaction of a confession to remove details meant to "humanize" the defendant by bringing out his character and personal history, which were irrelevant to his factual admissions regarding the commission of the crime.  742 F.3d at 905.  Here, the Government's excerpts created the misleading impression that Lopez confessed to the *mens rea* required for conviction: knowledge or mistaken belief that "Brit" was underage.  The excluded footage contained information directly qualifying statements which the

Government's editing cut off prematurely and, at times, at mid-sentence. Under these circumstances, at least some additional footage would have been admissible under the rule of completeness codified in Rule 106.

The district court compounded this error by ruling categorically that all remaining portions of the interrogation recording would be inadmissible hearsay if Lopez moved to introduce them into evidence. To be sure, Rule 106 does not obligate a district court to grant a party's motion to introduce an *entire* document or recording to correct the misleading impression created by the opposing party's partial introduction. We have long recognized that "[a]pplication of the rule of completeness is a matter for the trial judge's discretion." *Dorrell*, 758 F.2d at 434 (citing *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981)). Here, at least some excluded portions of the interrogation recording contained self-serving statements about Lopez's own character that were properly kept from the jury. But other portions contained statements that bore directly on the meaning of the excerpts presented by the Government at trial. By ruling that the remainder of the recording would be inadmissible hearsay if proffered by the defense, the district court denied Lopez the opportunity to proffer limited selections of additional footage that would serve to correct the misleading impression created by the Government's excerpts.

In response to Lopez's objection, the district court could have excluded the video clips offered by the Government or admitted the Government's clips subject to Lopez's ability to proffer additional portions of the recording under Rule 106. The only course foreclosed by the Federal Rules of Evidence was the one taken here: admitting portions of a document or recording that risked misleading the jury while

foreclosing the admission of any additional portions of the same document or recording.[2]

## 2. *Harmless Error Review*

Nevertheless, we hold that remand for a new trial is unwarranted because the district court's misapplication of Rule 106 was harmless error.  Throughout the proceedings below, Lopez's defense focused on disputing the knowledge element of both charged offenses by attempting to persuade the jury that he believed "Brit" was an adult law enforcement agent.    Given the extensive circumstantial evidence presented at trial of Lopez's belief that "Brit" was underage, the probative value of the wrongfully excluded interrogation footage, and the mitigating effect of Lopez's trial testimony on any prejudice resulting from admission of the interrogation excerpts, we conclude "it is more probable than not that the error did not materially affect the verdict." *Bailey*, 696 F.3d at 803 (citation omitted).

It is well established that the strength of the Government's case can render trial errors harmless by reducing the likelihood that tainted evidence impacted the

---

[2] Lopez also argues for the first time on appeal that showing the interrogation excerpts at trial violated his Fifth Amendment right against self-incrimination and his due process right to a fair trial even if the excerpts were admissible under the Federal Rules of Evidence.  Because we hold the district court abused its discretion and violated Rule 106 by admitting the evidence, we need not pass on the contention that Rule 106 violated the Constitution as applied in this case.  In any event, harmless error review would be equally applicable to such a violation.  Lopez does not argue the district court's erroneous evidentiary ruling amounts to a structural constitutional error requiring automatic reversal.  Nor does Lopez argue the district court violated his Fifth Amendment right not to testify at trial by putting him in a position where taking the stand was the only way to rebut the Government's misleading evidence.

verdict.  *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005); *United States v. Gonzalez-Sandoval*, 894 F.2d 1043, 1049 (9th Cir. 1990).  Here, the Government introduced reams of sexually explicit messages which Lopez sent to "Brit" after she repeatedly claimed to be thirteen years old.  Lopez referenced "Brit's" sexual inexperience by offering to teach her how to perform various sexual acts and continued to send her explicit emails and obscene materials after receiving photographs from "Brit" depicting an underage girl.  Throughout the communications, Lopez expressed a fear of getting in trouble because "Brit" was underage.  Investigating agents explained at trial that Lopez attempted to meet "Brit" to engage in sexual acts and repeatedly solicited nude photographs from her.  Given the strength of the evidence that Lopez believed "Brit" was underage, the jury likely would have voted to convict even if the district court had excluded the Government's video clips or admitted the entire interrogation recording into evidence as Lopez requested.

Lopez's trial testimony also served to mitigate any prejudice resulting from the improper admission of the misleading excerpts.  Lopez took the stand to explain his state of mind when communicating with "Brit."  Lopez told the jury he communicated with "Brit" despite knowing the persona was a law enforcement trap because he hoped to obtain a discharge from the military and thus avoid paying child support and alimony.  Lopez specifically testified about the interrogation, noting that it lasted almost two hours and that the clips presented by the Government were misleading.  Taken together, the Government's evidence and Lopez's trial testimony left the jury in substantially the same position to judge the credibility of Lopez's *mens rea* defense as it would have been absent the district court's erroneous

evidentiary ruling.  A new trial is not required under these circumstances.

## B.  Attempted Enticement of a Minor

Next, Lopez challenges the sufficiency of the evidence supporting his attempted enticement conviction pursuant to 18 U.S.C. § 2422(b).  The indictment alleged Lopez violated Section 2422(b) by attempting to entice a minor to engage in sexual activity criminalized by Guam's First Degree Criminal Sexual Conduct statute, 9 G.C.A. § 25.15(a)(1). Lopez twice moved for acquittal under Federal Rule of Criminal Procedure 29 on the ground that the Government failed to prove the *mens rea* required for conviction by showing Lopez believed "Brit" was underage.  The district court denied both motions after concluding the evidence was sufficient to allow a reasonable jury to find all elements of the charged offense, including that Lopez believed "Brit" was underage.

On appeal, Lopez challenges the denials of his Rule 29 motions on the ground that the Government failed to prove a different element of the Section 2422(b) offense: that the sexual activity in which he sought to entice "Brit" to engage was "sexual activity for which any person can be charged with a criminal offense."  According to Lopez, this statutory language means "the Government had to prove that Mr. Lopez attempted to entice a minor to engage in sexual activity that would have violated a criminal offense for which he actually could have been prosecuted."  Because the indictment cited a Guam law criminalizing the sexual penetration of a minor under fourteen, Lopez argues the jury "had to find that Mr. Lopez attempted to entice a minor to engage in 'sexual penetration,' as is required to violate the Guam statute."  In other words, Lopez asks us to interpret Section 2422(b) as requiring the Government to charge a

predicate offense and to prove Guam would have had jurisdiction to prosecute him for said predicate offense. Because the Government failed to prove Guam or another governmental entity would have had jurisdiction to prosecute violations of the Guam statute cited in the indictment that were to occur on AAFB, a federal enclave, accepting Lopez's argument would require us to reverse the Section 2422(b) conviction and remand for acquittal. *See United States v. Audette*, 923 F.3d 1227, 1238 (9th Cir. 2019).

As an initial matter, we conclude Lopez forfeited this statutory argument by failing to raise it before the district court. While Rule 29 motions need not specify grounds for acquittal, it is well established that Rule 29 motions raising particular grounds fail to preserve appellate review of other grounds not raised. *United States v. Hussain*, 972 F.3d 1138, 1146 (9th Cir. 2020); *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010). We review forfeited challenges to the sufficiency of the evidence for plain error. *United States v. Garcia-Guizar*, 160 F.3d 511, 516–17 (9th Cir. 1998). To establish plain error, the defendant must at least demonstrate an error, that the error was plain, and that the error prejudiced his substantial rights. *United States v. Depue*, 912 F.3d 1227, 1234–35 (9th Cir. 2019) (en banc); *see also United States v. Olano*, 507 U.S. 725, 733–36 (1993). We may overturn a conviction for plain error resulting in insufficient evidence only "to prevent a miscarriage of justice or to preserve the integrity and the reputation of the judicial process." *Garcia-Guizar*, 160 F.3d at 516 (citing *Olano*, 507 U.S. at 736).[3]

---

[3] Our decisions in *Hussain* and *Graf* used the term "waiver" rather than "forfeiture" to describe arguments for acquittal not properly

We conclude it was not error, let alone plain error, for the district court to enter a judgment of conviction as to the Section 2422(b) attempted enticement charge on this record. We hold as a matter of first impression that Lopez's reading of Section 2422(b) to require charging a specific predicate offense is inconsistent with the statute's text and how the statute has been interpreted.  Instead, Section 2422(b)'s "sexual activity for which any person can be charged with a criminal offense" element requires the Government to prove the defendant proposed sexual conduct that would have constituted any criminal offense in one or more relevant territorial jurisdictions.  Under this reading of Section 2422(b), the Government presented sufficient evidence to allow the jury to conclude Lopez attempted to entice "Brit" to engage in sexual conduct that is criminal in Guam.

1.  ***Meaning of "any sexual activity for which any person can be charged with a criminal offense" in 18 U.S.C. § 2422(b)***

"As always, we begin with the text of the statute." *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 879 F.3d

---

preserved before the district court. *See Hussain*, 972 F.3d at 1146; *Graf*, 610 F.3d at 1166.  But "waiver" is "the 'intentional relinquishment or abandonment of a known right'" and entirely precludes appellate review, while "forfeiture" is "the failure to make the timely assertion of a right" and subjects an argument to plain error review.  *Olano*, 507 U.S. at 733 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Our circuit law is clear that waiver requires "evidence that the defendant was aware of the right he was relinquishing and relinquished it anyway."  *Depue*, 912 F.3d at 1233 (citing *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc)).  Because there is no evidence that Lopez considered including the argument for acquittal now pressed on appeal but declined to do so, the argument was forfeited, not waived.

1000, 1003 (9th Cir. 2018) (quoting *Limtiaco v. Camacho*, 549 U.S. 483, 488 (2007)).  18 U.S.C. § 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

By its plain language, Section 2422(b) criminalizes communications that persuade, induce, entice, or coerce a minor to engage in sexual activity regarded as criminal.  For the reasons that follow, we hold Section 2422(b) requires proof that the defendant's persuasive communications described sexual conduct that could be charged in at least one relevant territorial jurisdiction but does not require the Government to indict a specific predicate offense or to prove a governmental entity would have had jurisdiction to prosecute the defendant for such predicate offense.

First, the phrase "any person" in the clause "for which any person can be charged with a criminal offense" indicates Congress deliberately chose to divorce criminal liability under Section 2422(b) from the actual or attempted commission of a predicate offense.  By using the phrase "*any person*" rather than "*the defendant*," Section 2422(b) sets out an objective inquiry that asks whether *a* person could be charged in an applicable territorial jurisdiction for the sexual conduct proposed in the defendant's communications.  *See,*

*e.g.*, *United States v. Saldaña-Rivera*, 914 F.3d 721, 724 (1st Cir. 2019) ("Nothing in the language of [S]ection 2422(b) requires the [G]overnment to show that Saldaña himself could have been charged . . . . Rather, criminal liability arises under [S]ection 2422(b) if . . . any adult who engages in the sexual activity in which Saldaña attempted to engage could be charged."). For this reason, a defendant can be convicted of attempted enticement pursuant to Section 2422(b) based on communications with an adult undercover agent he believed to be a minor even if the criminal laws of the relevant jurisdiction cover only completed sex crimes with a minor. *See id.* The question is whether "any person" who proposes engaging in the sexual acts proposed by the defendant would be committing a crime, not whether the defendant himself could have been charged had the conduct come to fruition with the actual person with whom he was communicating.

Second, Congress knows how to impose a predicate offense requirement; it did not do so in Section 2422(b). Consider the differences between Section 2422(b) and the Racketeer Influenced and Corrupt Organizations Act (RICO), which imposes criminal liability on "[w]hoever . . . commits . . . or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do." 18 U.S.C. § 1959(a). The same word imposing criminal liability under RICO, "[w]hoever," also modifies the phrase "a crime of violence . . . in violation of the laws of any State or the United States." Thus, the defendant must have committed or threatened to commit a particular predicate offense to be convicted under RICO. By contrast in Section 2422(b), the word "[w]hoever" modifies the act of criminal enticement while "any person" modifies the "can be charged with a criminal offense" element. The defendant must have

committed the enticement but need not necessarily be chargeable with a particular predicate offense.  Lopez does not cite, nor are we aware of, any statute similar to Section 2422(b) in which Congress used this structure to impose a predicate offense requirement.

Third, Section 2422(b)'s use of the indefinite article "a" is further evidence that the "can be charged with *a* criminal offense" element is not tethered to the defendant or to limitations imposed elsewhere in the statute.  Whereas definite articles like "the" restrict the noun that follows as particularized in scope or previously specified by context, the indefinite "a" has generalizing force.  *See Nielsen v. Preap*, 139 S. Ct. 954, 965 (2019) (citing *The*, Merriam-Webster's Collegiate Dictionary 1294 (11th ed. 2005)); *In Re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002) (citing *The*, Black's Law Dictionary 1477 (6th ed. 1990)).  This distinction matters because "the 'rules of grammar govern' statutory interpretation 'unless they contradict legislative intent or purpose.'"  *Preap*, 139 S. Ct. at 965 (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 140 (2012)).  Courts should hesitate before imposing constraints on the scope of criminal liability not evident in the statute's text or context.  *See United States v. Shill*, 740 F.3d 1347, 1352 (9th Cir. 2014) (declining to limit the phrase "a criminal offense" in Section 2422(b) to felonies because the plain meaning of the statute supports no such limitation).

Finally, Section 2422(b)'s repeated use of the word "any" ("any facility," "any sexual activity," "any person") suggests the class of communications covered by the statute should be construed broadly.  Unless limited by context, the word "any" bears the "expansive meaning" of "one or some indiscriminately of whatever kind."  *Ali v. Fed. Bureau of*

*Prisons*, 552 U.S. 214, 219 (2008) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)).  The text and context of Section 2422(b) contain none of the limiting factors that sometimes counsel against the broad reading of "any."  The breadth of Section 2422(b)'s language is intentional, and we must take Congress at its word by declining artificially to narrow the scope of predatory communications subject to the statute.  *See Shill*, 740 F.3d at 1354 ("Congress's repeated use of the word 'any,' combined with the expansive list of unlawful acts listed in [Section 2422(b)] . . . strongly suggests that Congress intended the statute to carry its literal meaning.").

Lopez fails to identify any contrary words in the text or context of Section 2422(b) that support his reading of the statute to require the Government to indict a specific predicate offense and prove hypothetical jurisdiction over the same.[4]  Instead, Lopez relies on our decisions in *United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004), and *United States v. Tello*, 600 F.3d 1161 (9th Cir. 2010), both of which affirmed Section 2422(b) convictions against challenges to the element Lopez now contests on appeal.  Lopez believes *Dhingra* and *Tello* required the Government to prove *the defendant* could be charged with one or more specific criminal offenses cited in the indictment had he followed through with the sexual conduct proposed.  Neither case supports Lopez's reading of Section 2422(b) to require a specific predicate offense as an essential element of the enticement charge.

---

[4] Nor does our dissenting colleague, who repeatedly asserts Section 2422(b) requires the Government to charge a predicate offense, without offering a single word in the text of the statute on which to anchor his assertion.  *See, e.g.*, Dissenting Op. 48–49, 52 n.6, 55, 59–60.

In *Dhingra*, a defendant convicted pursuant to Section 2422(b) for engaging in explicit online conversations with a fourteen-year-old girl argued the statute violated the First and Tenth Amendments by incorporating all state and local laws, thereby subjecting defendants to far-flung local standards of conduct and usurping the states' police power over sex crimes. 371 F.3d at 564. We avoided these challenges by holding Section 2422(b) applies only "to situations in which an individual could actually be prosecuted" for the proposed sexual conduct consistent with "the jurisdiction and venue restrictions of state and federal law." *Id.* at 565. By specifying "an individual," *Dhingra* kept faith with the statute's use of "any person" to indicate the defendant himself need not be prosecutable for the proposed sexual acts. *See id.* at 564 ("[A] [Section] 2422(b) violation is its own offense subject to prosecution independent of other underlying offenses."). We further explained in *Dhingra* that Section 2422(b)'s "can be charged with a criminal offense" requirement is similar to the community standards element of judicial review of an obscenity statute in that both require the jury to evaluate the defendant's conduct against local rather than national standards. *See id.* at 565 ("As would be the case in the speech context, . . . 'a juror applying community standards will inevitably draw upon personal knowledge of the community or vicinage from which he comes.'" (quoting *Ashcroft v. ACLU*, 535 U.S. 564, 576–77 (2002))). That is, Section 2422(b) requires the jury to evaluate the defendant's conduct against local standards so that "the defendant would be judged in accordance with the community in which he is

prosecuted, i.e., the venue and jurisdiction flowing from the commission of the [Section] 2422(b) violation." *Id.*[5]

In *Tello*, another Section 2422(b) case, an Arizona resident entered California with the intent to pick up a purported minor with whom he had been communicating online and to return to Arizona to have sex with her. 600 F.3d at 1162–63. On appeal, the Arizonan argued there was insufficient evidence to support his conviction because the indictment cited only California statutes and not Arizona statutes in describing the unlawful nature of the intended sexual conduct. *Id.* at 1165. The Government argued the conviction should be affirmed because California law permitted criminal jurisdiction over persons who committed part of any crime within the state or, in the alternative, because the intended sexual conduct in Arizona could have been charged under several Arizona statutes *not* cited in the indictment. *See id.*; *United States v. Tello*, Gov't Br. at 20, 33, 2009 WL 5836124 (Oct. 14, 2009). Because we agreed with the Government that California could have exercised criminal jurisdiction over the defendant based on his communications and physical entry into the state, we declined to pass on "the various alternate grounds on which the [G]overnment ask[ed] us to affirm." *Tello*, 600 F.3d at 1167 & n.6. Thus, our decision did not require the Government to procure indictment of a specific predicate

---

[5] Our dissenting colleague argues we "misread[] our decision in *Dhingra*," which "never discusse[d] the *actual* issue presented here—whether the [G]overnment is limited to proving the offense charged by the grand jury." Dissenting Op. at 55 (emphasis in original). But as explained below, that is not the issue here. Rather, the issue here is whether *Dhingra* requires the Government to charge and to prove a specific predicate offense as an essential element of Section 2422(b) enticement charge. *Dhingra* did not so hold, and the dissent offers no argument to the contrary.

offense or to prove the relevant court would have had jurisdiction over the defendant for said predicate offense. Rather, we affirmed the Section 2422(b) conviction based on our reading of California law and said nothing about the propriety of the indictment's citations to certain state laws over others.[6]

In sum, Lopez identifies no prior decision in which our court has inferred from the text of Section 2422(b) that the Government must set out a particular predicate offense in the indictment. We have consistently resolved sufficiency of the evidence challenges to Section 2422(b) convictions by assessing whether the conduct proposed by the defendant would have been illegal in the relevant state or territory and have not required the Government to prove the relevant court would have had jurisdiction over a particular predicate offense charged in the indictment alongside the Section 2422(b) offense. *See id.*; *United States v. Goetzke*, 494 F.3d 1231, 1235 (9th Cir. 2007) (per curiam); *United States v. Meek*, 366 F.3d 705, 717–20 (9th Cir. 2004). Similarly, every one of our decisions to consider a constitutional challenge to Section 2422(b) has given full effect to the plain meaning of the statute without adopting a specific predicate

---

[6] Our dissenting colleague insists that we misread *Tello* because the court in that case "understood that it was limited to the California *predicate offenses charged in the indictment*." Dissenting Op. 57 (emphasis in original). But the *Tello* court said no such thing. Rather, the *Tello* court resolved the appeal on the narrow ground that the appellant was incorrect about the jurisdictional scope of California law. Because we agree with the dissent that Guam's jurisdictional statute would not extend to completed sexual conduct occurring solely within AAFB (a federal enclave), this narrower ground is unavailable here. That is why we address, as a matter of first impression, whether Section 2422(b) requires the Government to charge a predicate offense and prove here that Guam would have had jurisdiction over said predicate offense.

offense requirement or imposing other atextual narrowing constructions. *See Shill*, 740 F.3d at 1351–55 (rejecting vagueness challenge to the requirement that the defendant's communications relate to "a criminal offense"); *Dhingra*, 371 F.3d at 564 (rejecting First and Tenth Amendment challenges to the use of state and local law to define criminal sexual activity). We now join several other circuits in holding Section 2422(b) does not require the Government to allege a specific predicate offense or to prove that the relevant court would have had jurisdiction over the defendant for the commission of such offense, so long as the Government proved the defendant's proposed sexual conduct would have constituted "*a* criminal offense" under the laws of an applicable territorial jurisdiction. *See, e.g.*, *United States v. Jockisch*, 857 F.3d 1122, 1131–32 (11th Cir. 2017); *United States v. Hart*, 635 F.3d 850, 855–56 (6th Cir. 2011).[7]

---

[7] The Sixth and Eleventh Circuits have concluded Section 2422(b) does not require proof that the defendant could have been prosecuted under a particular law so long as the jury may reasonably conclude the defendant's communications proposed a criminal sexual act. *See Jockisch*, 857 F.3d at 1131–32; *Hart*, 635 F.3d at 855–56. The First, Second, and Eighth Circuits have declined to read a predicate offense requirement into Section 2422(b) without definitively rejecting the possibility. *See United States v. Berk*, 652 F.3d 132, 138–39 (1st Cir. 2011); *United States v. Spurlock*, 495 F.3d 1011, 1014 n.2 (8th Cir. 2007); *see also United States v. Brand*, 467 F.3d 179, 182 (2d Cir. 2006) (evaluating sufficiency of the evidence without asking whether the indictment charged a predicate offense). Only the Seventh Circuit has embraced the view that Section 2422(b) liability "depends on the defendant's having violated another statute, and the elements of the offense under that other statute must therefore be elements of the federal offense." *United States v. Mannava*, 565 F.3d 412, 415 (7th Cir. 2009). We agree with the Sixth Circuit that *Mannava* reached the wrong conclusion by analogizing to inapposite statutory schemes. *See Hart*, 635 F.3d at 855–56.

## 2.  *Plain Error Review*

Next, we determine whether the district court plainly erred by entering a judgment of conviction on the Section 2422(b) count.  Conviction for attempted enticement under Section 2422(b) requires proof that the defendant "knowingly (1) attempted to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense." *Goetzke*, 494 F.3d at 1234–35.  Lopez contests only the "sexual activity that would constitute a criminal offense" element of the Section 2422(b) charge, which requires proof that the defendant's communications sought to induce a minor to engage in conduct that would be criminal in at least one relevant territorial jurisdiction.

To determine whether the sexual conduct proposed would have been criminal, we look to the criminal and jurisdictional laws of the territorial jurisdictions in question. *See Tello*, 600 F.3d at 1165.  This case involves conduct within the Territory of Guam, in which Lopez resided, as well as conduct that occurred or was intended to occur within AAFB.    Guam authorizes criminal jurisdiction over individuals whose conduct within the Territory constitutes at least one element of an offense under territorial law.[8] Federal prosecutors exercise exclusive criminal jurisdiction

---

[8] Guam's territoriality statute provides for criminal jurisdiction over "conduct which is an element of the offense or the result which is such an element occurs within this Territory."  9 G.C.A. § 1.16(a)(1); *see also* Model Penal Code § 1.03.  Judicial construction of the Guam statute is limited, but jurisdictions with identical statutory language similarly require at least one element of the crime be committed in-state to authorize a criminal prosecution.   *See, e.g.*, *State v. Sumulikoski*, 110 A.3d 856, 862 (N.J. 2015); *State v. Wagner*, 596 N.W.2d 83, 87 (Iowa 1999).

over AAFB because the base is a federal enclave within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 7; *United States v. Smith*, 925 F.3d 410, 415–16 (9th Cir. 2019).

The district court did not err, let alone plainly err, by entering a judgment of conviction for the Section 2422(b) offense. The Government adduced sufficient evidence at trial to prove Lopez proposed to engage in unlawful sexual activity with a person he believed to be a minor. Under Guam law, an attempt to engage in sexual penetration of a minor under fourteen is a felony in the first degree punishable to the same extent as the completed offense. *See* 9 G.C.A §§ 25.15(a)(1) (First Degree Criminal Sexual Conduct), 13.60(a) (Attempt). An attempt conviction requires proof of the defendant's "intent to engage in conduct which would constitute such crime" and "a substantial step toward commission of the crime." *Id.* § 13.10; *see People v. Flores*, 2004 Guam 18 ¶ 12.

That is exactly what happened here when Lopez intentionally communicated with "Brit" from within the Territory of Guam in furtherance of his goal of sexual penetration. The Government introduced records of email communications in which Lopez discussed sex with "Brit" and sought to persuade "her" to have sex when they met in person. Lopez acknowledged at trial that he used online classifieds forums on prior occasions to invite others to visit him "off base, because that's where I live." A reasonable jury could conclude some of the communications with "Brit" were sent from off-base locations, including from Lopez's home, where he spent substantial time and likely formed the intent sexually to penetrate a minor. It is well established that communications intended to groom a victim to engage in sexual activity in the future constitute substantial steps

toward the completion of a crime. *See, e.g.*, *Tello*, 600 F.3d at 1165–66 (finding substantial step where defendant sought to persuade minor victim to engage in sexual acts and to agree to travel with him from California to Arizona); *Goetzke*, 494 F.3d at 1236 (finding substantial step where defendant sent letters to the victim proposing sexual activities at an unspecified future date).[9]

This is not the first Section 2422(b) case in which we have recognized that substantial steps toward the completion of a crime in another jurisdiction gave rise to criminal liability in the forum where the substantial steps occurred. In *Tello*, we rejected the argument that California could not have prosecuted the defendant for sexual acts which were to take place in Arizona because we concluded that California law authorized prosecution of intentional conduct undertaken in the state in partial execution of a crime to be completed within or without the State. By driving into California for a criminal purpose, the defendant took a substantial step toward committing an act that would have violated California law even though the completed crime was planned to take place in Arizona. *See* 600 F.3d at 1165–66. The analysis in *Tello* applies here because Guam has

---

[9] Our dissenting colleague states that he cannot understand why this particular offense should support the conviction and seeks to brand our analysis as allowing prosecution for "attempting to entice to attempt." Dissenting Op. 49–50 & nn.4–5. But the dissent's tongue-twister misunderstands Section 2422(b). Lopez has *not* been charged with attempted sexual penetration of a minor or any other violation of Guam law, and need not be for this federal prosecution to succeed. The question here is whether "any person can be charged with a criminal offense" for engaging in the sexual conduct proposed by the defendant. 18 U.S.C. § 2422(b). The answer is yes, because Guam could have charged a person in Lopez's position for attempted sexual penetration of a minor based on substantial steps taken within the Territory.

adopted the California attempt and criminal jurisdiction standards that informed our decision in that case. *Compare* Cal. Penal Code § 778a(a), *with* 9 G.C.A. § 1.16(a)(1); *People v. Quintanilla*, 2019 Guam 25 ¶¶ 12–15 (adopting the substantial step standard in *People v. Johnson*, 303 P.3d 379, 384 (Cal. 2013)). Like California in *Tello*, Guam could have prosecuted an individual in Lopez's position for an attempt to engage in sexual penetration of a minor based on substantial steps taken within the Territory of Guam.

Lopez argues the Government failed to prove the Section 2422(b) offense because the indictment specified that he engaged "in sexual activity for which a person can be charged with a criminal offense, *to wit: First Degree Criminal Sexual Conduct, in violation of 9 [G.C.A.] § 25.15(a)(1)*, all in violation of Title 18, United States Code, Sections 2422(b) and 2." The indictment did not specify Guam's attempt statute, and so the only potential predicate offense in the indictment was 9 G.C.A. § 25.15(a)(1), which criminalizes the completed sexual penetration of a minor under fourteen. It is undisputed that Guam would have lacked jurisdiction to prosecute an offense taking place exclusively within AAFB territory, and the evidence adduced at trial indicated Lopez proposed to meet "Brit" only at locations within AAFB. Thus, the argument goes, the Government proved Lopez could have been charged with completed sexual penetration of a minor under Guam law only if the United States could have prosecuted that offense on AAFB territory under the Assimilated Crimes Act, 18 U.S.C. § 13.[10]

---

[10] The Assimilated Crimes Act authorizes federal authorities to prosecute violations of state law taking place within federal enclaves. Assimilation of state law offenses into federal law is appropriate only

Because Section 2422(b) does not contain a predicate offense requirement, however, the indictment's citation to Guam's First Degree Criminal Sexual Conduct statute was mere surplusage. Gratuitous language in an indictment cannot bind the Government to proving elements not required for conviction pursuant to the applicable criminal statute. In *United States v. Garcia-Paz*, 282 F.3d 1212 (9th Cir. 2002), we addressed a similar sufficiency challenge to a conviction based on an indictment that alleged the defendant "knowingly import[ed] and br[ought] into the United States certain merchandise, *to wit, marijuana*, contrary to law." *Id.* at 1215 (emphasis added). The defendant argued the indictment required the Government to prove that he knew he was smuggling marijuana and not just "merchandise" more generally. We looked to the requirements of the statute to determine the elements the Government was required to prove, not the language in the indictment. Because the statute prohibited knowingly smuggling "*any merchandise* contrary to law," we held the Government needed to prove knowledge only as to the smuggling of merchandise without regard to its contents. *Id.* at 1217 (quoting 18 U.S.C. § 545) (emphasis added). The "to wit" clause in the charging document "was mere surplusage and did not cause the indictment to allege that [the defendant] had knowledge of the marijuana." *Id.* at 1216. Here, too, the Government proved the essential elements of the Section 2422(b) offense by adducing evidence that Lopez engaged in "sexual activity for which any person can be charged with a criminal offense." The indictment's "to wit" citation to a particular Guam statute was not compelled by Section 2422(b) and stated merely one means (but not the only means) by which

---

when the state law covers criminal conduct not already punished by a federal offense. *See Lewis v. United States*, 523 U.S. 155 (1998).

the jury could find Lopez proposed sexual conduct that would be criminal in a relevant territorial jurisdiction.[11, 12]

To be sure, the Government complicated this case by citing an inapt example of applicable law. Lopez perpetuated this difficulty by failing to object to the indictment, failing to seek a bill of particulars, and seeming to agree that the conduct alleged would have been chargeable in Guam until filing this appeal. But the question presented by Lopez's sufficiency of the evidence challenge is whether the Government adduced sufficient evidence at trial for the jury to conclude Lopez committed each element of the Section 2422(b) offense. *See Hussain*, 972 F.3d at 1146; *Graf*, 610 F.3d at 1166. Because Section 2422(b) requires that the jury conclude a person in Lopez's position could have been charged with a criminal offense in a relevant territorial jurisdiction for engaging in the conduct Lopez

---

[11] Our dissenting colleague argues *Garcia-Paz* is "a far cry from this case" because the "any sexual activity for which any person can be charged with a criminal offense" element of the Section 2422(b) charge "requires statutes to give it meaning." Dissenting Op. 66. But here again, our colleague assumes without any basis in ordinary principles of statutory interpretation that Section 2422(b) defines this element of the offense by reference to a *particular* predicate offense that must be charged in the federal indictment. *Garcia-Paz* dealt with the same legal question presented here: Whether the insertion of an illustrative "to wit" clause in an indictment obligates the Government to prove the particular conduct alleged in the illustrative clause. It does not.

[12] Our dissenting colleague further argues *Garcia-Paz* differs from this case because "here the jury was specifically instructed that the government must prove beyond a reasonable doubt a predicate crime that Lopez did not commit." Dissenting Op. 66 n.21. This argument is curious given that Lopez asks us to reverse his Section 2422(b) conviction on the ground that the court *failed* to instruct the jury as to the elements of the Guam First Degree Criminal Sexual Conduct statute cited in the indictment. *See infra*, Part II.C.

proposed, the Government carried its burden of proof. The district court did not err, let alone plainly err, by entering a judgment of conviction on this record.[13]

Our dissenting colleague believes this case does not involve a question of statutory interpretation at all and turns instead on the question whether "a court [can] amend the indictment returned by the grand jury to excise the charged predicate offense and substitute a different predicate offense." Dissenting Op. 60. But this view of the case simply *assumes* and asserts that Section 2422(b) requires the Government to charge a particular predicate offense without engaging in the statutory interpretation required to justify such a conclusion. Looking to the statute at issue here is not a needlessly "abstract inquiry." Dissenting Op. 58 n.14. Rather, it is the first step in evaluating Lopez's argument that the jury lacked sufficient evidence to convict him under Section 2422(b). Only by construing the requirements of the statute of conviction can our court determine whether the Government offered sufficient proof at trial to support the jury's verdict. That is what it means to "begin with the text of the statute." *Friends of Animals*, 879 F.3d at 1003 (quoting *Limtiaco*, 549 U.S. at 488).

As explained above, Congress did not structure Section 2422(b) like other statutes in which the federal criminal offense is explicitly defined by proof of a predicate offense. Rather, Section 2422(b) extends criminal liability to those persons who violate local standards of conduct by enticing

---

[13] Because Guam could have prosecuted a person in Lopez's position for attempted sexual penetration of a minor, we need not decide whether the Guam offense cited in the indictment could have been assimilated into and prosecuted under federal law pursuant to the Assimilated Crimes Act.

or attempting to entice a minor to engage in "any sexual activity for which any person can be charged with a criminal offense." *See Dhingra*, 371 F.3d at 565 (comparing Section 2422(b)'s "any person can be charged" element with the local standards requirement of obscenity prosecutions). Our dissenting colleague is correct that the Fifth Amendment's grand jury requirement is an important protection for liberty guaranteed to all federal criminal defendants. *See* Dissenting Op. 77–78. But this case presents no violation of that right in need of vindication, and the dissent errs by asserting the existence of atextual barriers in the way of prosecuting the predatory conduct toward minors that Congress sought to punish by enacting Section 2422(b).

By incorrectly assuming that Section 2422(b) requires the Government to charge a predicate offense, our dissenting colleague confuses the distinction between the constructive amendment of an indictment, which typically requires reversal, and a variance in proof, which requires reversal only upon a showing of prejudice. *See United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014). "An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *Id.* (quoting *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984)). Discrepancies between an indictment and evidence presented at trial amount to a constructive amendment in two general situations: first, when "there is a complex set of facts distinctly different from those set forth in the charging instrument" such that the defendant lacked notice; and second, when "the crime charged was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved." *Von Stoll*, 726 F.2d at 586 (citation and quotation marks omitted).

Here, there is no question that the Government proved at trial the same criminal behavior alleged in the indictment by adducing evidence that Lopez used online profiles to engage in lewd and predatory conversations in an attempt to engage in sexual relations with a person he believed to be an underage girl.  Nor is there any question that the Section 2422(b) attempted enticement offense indicted by the grand jury was ultimately proved at trial.  Whether the behavior in which Lopez engaged could have been charged under one Guam offense or another is irrelevant to the culpability of his conduct under federal law.  Section 2422(b) was enacted to punish those who engage in predatory communications with minors, and the grand jury was fully appraised of the relevant allegations when it made its decision to indict Lopez for violating this prohibition.  *See id.* at 587 (holding "the divergence between the indictment and proof did not affect the sufficiency of the complaint or alter the crime charged" because the culpable conduct proved at trial was the same as the conduct alleged in the indictment).  Indeed, we have never found a constructive amendment where "the indictment simply contains superfluously specific language describing alleged conduct irrelevant to the defendant's culpability under the applicable statute."  *Ward*, 747 F.3d at 1191; *see also Garcia-Paz*, 282 F.3d at 1216–17 (rejecting challenge based on an indictment's gratuitous specification of "to wit, marijuana" for a smuggling offense that covered "any merchandise"); *United States v. Antonakeas*, 255 F.3d 714, 721–22 (9th Cir. 2001) (rejecting challenge where the evidence failed to prove the indictment's specific claim that the defendant conspired to distribute cocaine in Hawaii because a nexus to Hawaii "was in no way essential to the offense on which the jury convicted" (citation omitted)).

Similarly, in *United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012), the defendant appealed his Section 2422(b)

conviction on the ground that the indictment alleged he attempted to entice a minor "us[ing] a facility and means of interstate commerce . . . *to wit*, . . . *a computer and the Internet*," whereas the evidence at trial included analogue telephone conversations. *Id.* at 414–15. The Second Circuit affirmed the conviction after concluding the divergence between the indictment and the proof at trial did not alter the "core of criminality" set out in the indictment or modify an "essential element" of the crime. *Id.* at 417. Without such an impact, the divergence did not constructively modify the indictment in violation of the defendant's Fifth Amendment rights. *Id.* at 422–24. The circumstances in *D'Amelio* are on all fours with this case, and the Second Circuit's analysis is consistent with our circuit's approach. Whether a "to wit" clause in an indictment offers surplus content to the interstate jurisdictional element or the "for which any person can be charged with a criminal offense" element of the Section 2422(b) offense, an indictment is not constructively amended by proof at trial of a different means unless the divergence otherwise prejudices the defendant's substantial rights.

Contrary to the view of our dissenting colleague, this case has little in common with *Howard v. Daggett*, 526 F.2d 1388 (9th Cir. 1975) (per curiam). *See* Dissenting Op. 67. The defendant in *Howard* was charged with inducing two specific women to engage in interstate prostitution. *Id.* at 1389. At trial however, the evidence and the jury instructions also referred to the defendant's conduct toward other alleged prostitutes not named in the indictment. *Id.* We found this change constituted an impermissible amendment of the indictment because the criminal conduct charged under the statute was different from the conduct for which the defendant was convicted. *Id.* at 1390. *Howard* was a case in which the evidence at trial involved "a complex

set of facts distinctly different from those set forth in the charging instrument." *Von Stoll*, 726 F.2d at 586 (citation omitted); *see Ward*, 747 F.3d at 1190–91 (citing *Howard* as following "a similar pattern" of cases in which a defendant was impermissibly convicted "for conduct not alleged in the indictment"). But that is not what happened here. Neither Lopez nor the dissent argue that the indictment alleged a complex set of facts different from the Government's proof at trial. The facts alleged in the grand jury's indictment were identical to the facts on which the petit jury convicted Lopez at trial, namely, that Lopez used online personas to lure "Brit," who he believed to be an underage girl, into sexual encounters. There was no last-minute switch of "Brit" for some other person at trial, and Lopez was well aware throughout these proceedings of the specific conduct on which the Government based the Section 2422(b) charge.

This case involves, at most, a variance in which "the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Ward*, 747 F.3d at 1189 (quoting *Von Stoll*, 726 F.2d at 586). The indictment proposed that the Government might prove Lopez attempted to entice a minor to engage in "sexual activity for which a person can be charged with a criminal offense" by reference to one Guam statute which required proof of sexual penetration. But the Government proved at trial that Lopez's proposed conduct would have been unlawful under another Guam statute which requires proof of an attempt to engage in sexual penetration. Lopez never argued, and cannot fairly argue, that this variance prejudiced his defense in any manner warranting relief on appeal. The charge against him was always attempted "enticement" of illegal sexual activity, not the actual commission of the acts about which he communicated with a person he believed to be a minor. He

was not misled.  *See Von Stoll*, 726 F.2d at 587 ("A variance between indictment and proof does not require reversal unless it affects the substantial rights of the parties." (citation omitted)).  As to the challenge before us, we conclude the district court did not err by entering a judgment of conviction.

## C.  Jury Instructions

Lopez also raises a due process challenge to the jury instructions given for the Section 2422(b) charge.  Prior to deliberations, the district court read the indictment to the jury and instructed the jury on all elements of the Section 2422(b) offense using a script expressly approved by both parties.  As to the "sexual activity for which any person can be charged with a criminal offense" element, the court instructed the jury that to reach a guilty verdict, it must conclude:

> [I]f the sexual activity had occurred, the defendant would have been charged with a criminal offense under the laws of Guam. . . . It is not necessary for the [G]overnment to prove that the individual was actually persuaded, induced and enticed to engage in sexual activity charge[d] in the indictment. . . . But it is necessary for the [G]overnment to prove that the defendant intended to engage in some form of unlawful sexual activity with the individual and knowingly and willfully took some action that was a substantial step toward bringing about or engaging in sexual activity charged in the indictment.

On appeal, Lopez for the first time relies on his reading of Section 2422(b) as requiring a specific predicate offense

to argue that the district court violated his due process rights by failing to instruct the jury on the elements of the Guam criminal sexual penetration statute cited in the indictment. We review forfeited objections to jury instructions for plain error, meaning the defendant must identify an error that was plain, affected his substantial rights, and seriously undermined the integrity or reputation of judicial proceedings. *United States v. Peterson*, 538 F.3d 1064, 1070 (9th Cir. 2008).[14]  We conclude that, although the district court should have instructed the jury on the applicable "laws of Guam," Lopez cannot meet his burden of establishing the error affected his substantial rights.

"It is a violation of due process for a jury instruction to omit an element of the crime." *Evanchyk v. Stewart*, 340 F.3d 933, 939 (9th Cir. 2003); *see also United States v. Gaudin*, 515 U.S. 506, 509–10 (1995).  The district court complied with this requirement by instructing the jury on the elements of the Section 2422(b) offense using model jury instructions for the Eighth Circuit, which separate out each element and provide additional detail not included in analogous model jury instructions for the Ninth Circuit.[15]

---

[14] The Government declined to argue that Lopez waived objection to the jury instructions on the Section 2422(b) charge when he consented to their form and substance despite knowing the indictment cited the Guam statute.  Because the Government waived any argument for waiver it may have had, we need not decide whether Lopez's consent to these instructions constituted relinquishment of a known right.  *See United States v. Pridgette*, 831 F.3d 1253, 1258–59 (9th Cir. 2016).

[15] Although similar in most respects, the model jury instructions for the Eighth and Ninth Circuits differ slightly when describing the "sexual activity for which any person can be charged" element.  *Compare* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit § 6.18.2422B (2017 ed.) ("[T]hat [if the sexual activity had occurred] . . . the defendant could have been charged with a

Because Section 2422(b) requires the Government to prove only that "any person" engaging in the sexual conduct proposed by the defendant could be charged under federal, state, or territorial law, the district court was not required to instruct the jury on the elements of a particular predicate offense as if they were elements of the Section 2422(b) offense. *See Garcia-Paz*, 282 F.3d at 1215–16 (rejecting jury instruction challenge where surplusage in the indictment did not constitute an essential element of the charged offense). We once again reject Lopez's core argument that Section 2422(b) requires the indictment and proof of a specific predicate offense.

The district court nevertheless erred in failing to define the "laws of Guam" against which Lopez's proposed sexual conduct was to be evaluated. Generally, trial courts need not define terms to the jury that are obvious, in common use, or "have plain and ordinary meanings within the statute." *Dhingra*, 371 F.3d at 567; *see also United States v. Chambers*, 918 F.2d 1455, 1460 (9th Cir. 1990). However, "where a federal prosecution hinges on an interpretation or application of state law, it is the district court's function to explain the relevant state law to the jury." *United States v. Davila-Nieves*, 670 F.3d 1, 8 (1st Cir. 2012) (citation omitted). The average juror may not know the boundaries of Guam's criminal law with respect to sexual conduct. In this case, the Guam offense implicated by the evidence offered by the Government at trial criminalizes attempted

---

criminal offense under the laws of [the United States] (identify the state)]."), *with* Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 8.192A (2010 ed., updated May 2020) (requiring the jury conclude the defendant enticed a minor to engage in "any sexual activity for which someone could be charged with an offense, that is [*insert title of sexual offense*]").

sexual penetration of a minor under fourteen.  *See* 9 G.C.A. §§ 13.10, 13.60(a), 25.15(a)(1).     Without a working definition of applicable Guam law, the jury may have lacked the requisite knowledge to evaluate whether the sexual conduct Lopez proposed to "Brit" was criminal in Guam.

To be clear, the burden was on the district court, not the Government, to instruct the jury on the requirements of applicable federal, state, and territorial laws.  Federal courts may take judicial notice of matters of public record, including statutes.  *See* Fed. R. Evid. 201(b); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  Once the Government adduced evidence that Lopez proposed sexual conduct to a minor, the jury was required to determine whether the sexual conduct was considered criminal in Guam or another territorial jurisdiction.  Prior to jury deliberations, it was incumbent upon the district court to ensure the jury possessed the requisite background knowledge to evaluate the sufficiency of the Government's evidence against applicable criminal laws.  The failure to do so was error.

We need not decide whether the error was plain or seriously undermined the integrity or reputation of judicial proceedings because there is no question that Lopez cannot meet his burden of demonstrating prejudice to his substantial rights.  Because jury instruction error is nonstructural, a misstatement or omission in jury instructions affects a defendant's substantial rights only when prejudice results. *See United States v. Alghazouli*, 517 F.3d 1179, 1190 (9th Cir. 2008).  To demonstrate prejudice, the defendant must show "a reasonable probability" that "the result of the proceeding would have been different" but for the alleged error.  *Id.* (quoting *United States v. Dominguez Benitez*,

542 U.S. 74, 81–82 (2004)); *see also Depue*, 912 F.3d at 1234.

Lopez fails to identify a reasonable probability that the jury would have come to a different decision had the district court instructed that 9 G.C.A. §§ 13.10, 13.60(a), and 25.15(a)(1) criminalize attempts to engage in sexual penetration of a minor under fourteen years of age. The jury necessarily concluded that Lopez believed "Brit" was underage when it decided to convict on the Section 2422(b) and Section 1470 charges because the offenses require proof that the defendant knew or mistakenly believed the victim was under eighteen or sixteen years of age, respectively. Every piece of evidence capable of supporting the jury's verdict in this regard indicated "Brit" was thirteen, including her statements in the chat transcripts, Lopez's reactions to those statements, and photographs sent from "Brit" to Lopez. The jury clearly credited the Government's documentary evidence over Lopez's trial testimony that he never believed "Brit" was underage, and this credibility decision would not likely have changed based on the missing instruction. Nor did Lopez contest the fact that he proposed to engage in sexual penetration with "Brit" as opposed to other forms of sexual conduct that would not have violated this particular territorial law. After all, Lopez admitted to sending the emails that the Government presented at trial and instead relied on a *mens rea* defense that the jury disregarded.

We can envision a different Section 2422(b) case in which the definition of applicable federal or state offenses would influence the jury's evaluation of whether the defendant proposed sexual conduct that would have been criminal in at least one relevant jurisdiction. The jury's verdict may well come down to distinctions in state law where the victim's age places the victim within the

protections of the criminal laws of certain jurisdictions but not others.  This, however, is not such a case.

## D.  Attempted Transfer of Obscenity to a Minor

Finally, Lopez raises a sufficiency of the evidence challenge to his conviction under 18 U.S.C. § 1470 for attempted transfer of obscenity to a minor under sixteen.  In his Rule 29 motions, Lopez argued unsuccessfully that the Government failed to prove he had knowledge of "Brit's" age as to the Section 1470 charge by showing he believed "Brit" was under sixteen.  On appeal, Lopez argues the Government was obligated to prove Lopez transmitted obscene materials to an actual minor because the indictment, jury instructions, and jury verdict form all indicate that he was charged and convicted for *completed* transfer of obscenity rather than attempt.  We review this challenge for plain error because Lopez failed to raise it below.  *See Hussain*, 972 F.3d at 1146; *Garcia-Guizar*, 160 F.3d at 516.  We hold there was no error, let alone plain error, in the district court's denial of the Rule 29 motions and entry of judgment of conviction on the attempted transfer charge.

Lopez is simply incorrect that the indictment charged completed transfer of obscenity rather than an attempt.  His argument rests solely on the caption preceding the relevant count in the indictment, which read "Transfer of Obscenity to a Minor."  However, the operative text of the indictment charged Lopez with "attempt[ing] to transfer obscene matter . . . by sending a girl he believed was thirteen years old two images and a video which depicted an adult male exposing his erect penis."  This language defeats Lopez's argument because "it is well established that the caption is completely surplusage and does not control the body of the indictment." *United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir. 1983)

(citing *United States v. Dawson*, 516 F.2d 796, 804 (9th Cir. 1975)).

Further, although our overall review is for plain error, we agree with the Government that Lopez waived objection to the jury instructions and jury verdict form as to the Section 1470 charge. When the record demonstrates the defendant knowingly relinquished an objection, including an objection to particular jury instructions, the issue is unreviewable on appeal. *See Depue*, 912 F.3d at 1233; *United States v. Kaplan*, 836 F.3d 1199, 1217 (9th Cir. 2016). Lopez reviewed the jury instructions at the request of the district court and approved a script that included a substantial step instruction for the Section 2422(b) count but not the Section 1470 count. In doing so, Lopez was fully aware that the indictment charged an attempt to violate Section 1470 and knew that the attempt charge under Section 2422(b) warranted a substantial step instruction. This knowledge is sufficient to establish waiver and foreclose consideration of the argument on appeal.

Lopez also waived objection to the jury verdict form by approving a draft that described the Section 1470 charge as "Transfer of Obscenity" without reference to attempt. Jury verdict forms are generally considered a type of jury instruction, and the same waiver standard applies. *See United States v. Stinson*, 647 F.3d 1196, 1218 (9th Cir. 2011). Challenges to the content of trial documents expressly approved by a defendant with full knowledge of his rights are waived and cannot support the reversal of a conviction on appeal.

## III.  CONCLUSION

Lopez failed to demonstrate the district court committed prejudicial error or plain error warranting relief.  We therefore **AFFIRM** the judgment of conviction.

---

BENNETT, Circuit Judge, dissenting in part:

I respectfully dissent from the Majority's affirmance of Wilfredo Lopez's conviction on count one—attempted enticement of a minor in violation of 18 U.S.C. § 2422(b).[1] The grand jury charged Lopez with attempting to "entice[] a person who the defendant believed to be under eighteen years of age[] to engage in sexual activity for which a person can be charged with a criminal offense, to wit: First Degree Criminal Sexual Conduct, in violation of 9 [Guam Code Annotated ("GCA")] § 25.15(a)(1)."[2]  As I explain below, Lopez could not have been charged with or committed First Degree Criminal Sexual Conduct in violation of 9 GCA § 25.15(a)(1) as the predicate offense for his § 2422(b) violation, because the sexual activity he proposed was to take place on Anderson Air Force Base (AAFB), a place within the Special Maritime and Territorial Jurisdiction of the United States, and that crime is not assimilated under the

---

[1] I concur in the remainder of the majority opinion.

[2] 9 GCA § 25.15(a)(1) provides: "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with the victim and if any of the following circumstances exists: (1) the victim is under fourteen (14) years of age . . . ."

Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13.[3]  Thus, Lopez could not have committed and did not commit the crime with which he was charged in the indictment.  Per force, the government presented insufficient evidence of his guilt.  The Majority convicts the defendant for a different, uncharged crime—attempting to "entice[] a person who the defendant believed to be under eighteen years of age[] to engage in sexual activity for which a person can be charged with a criminal offense, to wit: attempted First Degree Criminal Sexual Conduct, in violation of 9 GCA §§ 13.10, 13.60(a), & 25.15(a)(1)."[4]  *See* Majority at 31.  Though I

---

[3] "Whoever within or upon [the Special Maritime or Territorial Jurisdiction of the United States], . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a).

[4] The government's arguments as to the Guam offense that Lopez could have been convicted of are unclear.  The government argued: "Lopez could be prosecuted for violation of Guam law because from his off-base home, he used the internet to send e-mail messages to Brit. Lopez could actually be prosecuted for violation of Guam law."  The government also argued: "Lopez'[s] acts advanced and verified the existence of his purpose—to gain Brit's assent to engage in sexual activity.  Lopez could actually be charged with attempting to persuade Brit to engage in sexual activity as defined by Guam law—the law of the venue that had jurisdiction over the defendant."  But the government never argued in its answering brief that the conviction should be affirmed because the defendant was guilty of "attempting to entice to attempt." Neither did the government cite either GCA § 13.10 or § 13.60(a), relied upon by the Majority.  Nor did the jury instructions, either directly or indirectly, inform the jury of any predicate offense other than 9 GCA § 25.15(a)(1), which was the *only* predicate offense specified in the indictment.  And nothing in Lopez's reply brief suggests that he thought *attempting to entice to attempt* had been raised by the government or was

harbor serious doubts about whether such a crime (attempting to entice to attempt) could even exist,[5] Lopez was neither charged with nor convicted of that theoretical offense, nor was the jury instructed as to that theoretical offense. Thus, I dissent.

## I.

To successfully convict Lopez for attempted enticement of a minor under § 2422(b), the government had to prove that Lopez knowingly "(1) attempted to (2) persuade, induce, entice, or coerce (3) a person under 18 years of age (4) to engage in sexual activity that would constitute a criminal offense." *United States v. Goetzke*, 494 F.3d 1231, 1234–35

---

otherwise at issue in the case. Because of a question at oral argument— "whether, under Guam law, one can commit the completed crime of First Degree Criminal Sexual Conduct ('CSC') without also committing its attempt,"—Lopez submitted a Rule 28(j) letter noting that, under Guam law, a defendant can commit the completed crime without also committing its attempt. Appellant's Citation of Suppl. Authorities at 1, *United States v. Lopez*, No. 19-10017 (Oct. 21, 2020), ECF No. 55. The letter also stated: "The Government did not charge the *attempted* object offense, which is codified separately ([9 GCA] § 13.10) and involves distinct elements (specific intent)." *Id.* at 2. The government filed no response.

[5] I don't understand why the Majority discusses *this* particular uncharged predicate offense. As Lopez himself acknowledged at oral argument, the government could have charged him with enticement in violation of § 2422(b), with the predicate offense of sexual abuse of a minor within the Special Maritime and Territorial Jurisdiction of the United States, in violation of 18 U.S.C. § 2243(a). Oral Arg. at 2:22–2:33, https://cdn.ca9.uscourts.gov/datastore/media/2020/10/20/19-10017.mp3. Lopez was clearly trying to induce someone who he believed was under sixteen to engage in on-base sexual acts. But while that uncharged predicate offense would not have suffered from a possible *attempting to entice to attempt* flaw, a conviction based on it would still suffer from the flaws I identify here.

(9th Cir. 2007) (per curiam). We "read § 2422(b) to incorporate only the laws 'for which a person could be charged with a criminal offense,' *i.e.*, the law of the venue that would have jurisdiction over the defendant." *United States v. Dhingra*, 371 F.3d 557, 564 (9th Cir. 2004).

The indictment charged Lopez as follows:

> Between on or about October 30, 2017, and on or about November 22, 2017 in the District of Guam, the defendant WILFREDO LEE LOPEZ, used the mail or any facility or means of interstate or foreign commerce, that is, a cellphone and the Internet, to knowingly attempt to persuade, induce, and entice[] a person who the defendant believed to be under eighteen years of age, to engage in sexual activity for which a person can be charged with a criminal offense, *to wit: First Degree Criminal Sexual Conduct, in violation of 9 GCA § 25.15(a)(1)*, all in violation of Title 18, United States Code, Sections 2422(b) and 2.

(emphasis added).

First Degree Criminal Sexual Conduct, in violation of 9 GCA § 25.15(a)(1), is the charged predicate offense for Lopez's attempted enticement of a minor. Because the indictment lists *only* this offense, this offense is the only offense we can consider in determining whether the government presented sufficient evidence of the defendant's

guilt.**[6]**  *See United States v. Ward*, 747 F.3d 1184, 1189 (9th
Cir. 2014).  Once a grand jury has determined the charges,
"neither a prosecutor nor a judge can change the charging
part of an indictment to suit [his or her] own notions of what
it ought to have been, or what the grand jury would probably
have made it if their attention had been called to suggested
changes." **[7]**  *Id.* (alteration in original) (citation omitted).

This rule is an old one.  As Lord Mansfield noted in
1770: "[T]here is a great difference between amending
indictments and amending informations.  Indictments are
found upon the oaths of a jury, and ought only to be amended
by themselves; but informations are as declarations in the

---

**[6]** The Majority misreads my dissent, stating that it "*assumes* and
asserts that Section 2422(b) requires the Government to charge a
particular predicate offense without engaging in the statutory
interpretation required to justify such a conclusion."  Majority at 36
(emphasis in original).  But I neither assume nor assert that Section
2422(b) requires the government to charge a particular predicate.  *See
infra* n.17.  I simply take the indictment the grand jury returned as it
comes to us—an indictment that *does* list a specific predicate offense.
And so I need not address whether the Majority's attempt to distinguish
Section 2422(b) from the RICO statute to support its conclusion, *see*
Majority at 22–25, is sound statutory construction, or instead interpretive
legerdemain.

**[7]** We said in *Ward*:

> "If an indictment could be so lightly departed from,
> then the great importance which the common law
> attaches to an indictment by a grand jury, as a
> prerequisite to a prisoner's trial for a crime, and
> without which the Constitution says 'no person shall
> be held to answer,' [might] be frittered away until its
> value is almost destroyed . . . ."

747 F.3d at 1189 (alterations in original) (quoting *United States v.
Leichtnam*, 948 F.2d 370, 376 (7th Cir. 1991)).

king's suit. An officer of the crown has the right of framing them originally; he may, with leave, amend in like manner as any plaintiff may do."[8]  *Ex parte Bain*, 121 U.S. 1, 6 (1887) (quoting *Rex* v. *Wilkes*, 4 Burr., 2527, 2569, 98 Eng. Rep. 327 (1770) (Lord Mansfield)).[9]

---

[8] Federal Rule of Criminal Procedure 7, "The Indictment and the Information," states: "AMENDING AN INFORMATION.  Unless an additional or different offense is charged or a substantial right of the defendant is prejudiced, the court may permit *an information* to be amended at any time before the verdict or finding." Fed. R. Crim. P. 7(e) (emphasis added).  There is, of course, no such rule covering the amendment of *an indictment*.

[9] The Department of Justice Criminal Resource Manual provides that:

> The general rule is that indictments cannot be amended in substance.  "An amendment to an indictment occurs when the charging terms of an indictment are altered." *United States v. Cancelliere*, 69 F.3d 1116, 1121 (11th Cir. 1995).  This follows from the fundamental distinction between the information and the indictment . . . which must be returned by a grand jury.  If the indictment could be changed by the court or by the prosecutor, then it would no longer be the indictment returned by the grand jury.  Indeed, in *Russell v. United States*, 369 U.S. 749, 769 (1962), the Court pointed out that a consequence of amending the indictment is that the defendant "could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."  "Thus, the Fifth Amendment forbids amendment of an indictment by the Court, whether actual or constructive." *United States v. Wacker*, 72 F.3d 1453, 1474 (10th Cir. 1995).

U.S. Dep't of Just., Criminal Resource Manual § 236 (2020).

**A.**

In amending the indictment, the Majority invades the province of the grand jury and takes upon itself a role that the Constitution specifically and exclusively carves out for the grand jury. *Ward*, 747 F.3d at 1189; *see also* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ."). As the district court properly instructed the jury: "You are here only to determine whether the defendant is guilty or not guilty of the charges in the indictment. The defendant is not on trial for any conduct or offense not charged in the indictment."[10] Courts give this instruction because "[a] defendant in a felony trial can only be convicted of charges upon which a grand jury has returned an indictment." *United States v. Arreola*, 467 F.3d 1153, 1162 (9th Cir. 2006).[11]

---

[10] This is Ninth Circuit Model Criminal Jury Instruction 3.10. In one of the government's proposed jury instructions to the district court, it stated that "it is *necessary* for the government to prove that the defendant intended to engage in some form of unlawful sexual activity with the individual and knowingly and willfully took some action that was a substantial step toward bringing about or engaging in sexual activity *charged in the Indictment*." (emphases added).

[11] The court also instructed the jury, at the request of the government:

> The defendant, WILFREDO LEE LOPEZ, is charged in Count 1 of the indictment with attempted enticement of a minor in violation of Section 2422(b) of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

The Majority misreads our decision in *Dhingra*, to conclude that the government need not prove that the charged predicate offense(s) "could actually be prosecuted" against the defendant, but instead can present evidence on any predicate crime it wishes, regardless of what the grand jury charged. *See* Majority at 26–27. The Majority tries to frame the issue as "whether *Dhingra* requires the Government to charge and prove a specific predicate offense as an essential element of [the] Section 2422(b) enticement charge." Majority at 27 n.5. But *Dhingra* never discusses the *actual* issue presented here—whether the government is limited to proving the predicate offense charged by the grand jury.[12] *See Dhingra*, 371 F.3d 557.

The Majority also misreads our decision in *United States v. Tello*, 600 F.3d 1161 (9th Cir. 2010), to further support its

> First, the defendant knowingly used the mail, a computer, or any means of interstate or foreign commerce, that is, a cellphone and the Internet, to attempt to persuade, induce, and entice, an individual under the age of eighteen (18) years of age to engage in sexual activity for which a person can be charged with a criminal offense, to wit: First Degree Criminal Sexual Conduct, in violation of 9 Guam Code Annotated Section 25.15(a)(1) . . . .

[12] The Majority extracts the phrase "a § 2422(b) violation is its own offense subject to prosecution independent of other underlying offenses" to support its argument. *See* Majority at 26 (quoting *Dhingra*, 371 F.3d at 564) (cleaned up). However, the sentence in full reads: "Similarly, because a § 2422(b) violation is its own offense subject to prosecution independent of other underlying offenses, the state's power to prosecute criminal sexual conduct under state law is in no way abrogated." *Dhingra*, 371 F.3d at 564. This has nothing to do with whether the government could prove a § 2422(b) violation based on the facts of a hypothetical offense never charged in the indictment (much less a hypothetical offense on which the petit jury was never instructed).

conclusion.   The Majority concludes that *Tello* "did not require the Government to procure indictment of a specific predicate offense or to prove the relevant court would have had jurisdiction over the defendant for said predicate offense."   Majority at 27–28.   But that conclusion is unrelated to what the *Tello* court considered.  The indictment alleged very specific predicate California offenses.[13]   600 F.3d at 1165.   Tello lived in Arizona and arranged over the internet to meet in California with someone he thought was a thirteen-year-old California resident.   *Id.* at 1162–63.   He told "her" that he would drive to California to pick her up and return with her to Arizona "where she could live with him and have sex."   *Id.*   He drove from Arizona to the prearranged meeting place in Los Angeles and was then arrested.   *Id.* at 1163.   Though sex between adults and children was illegal in Arizona, *see* Ariz. Rev. Stat. § 13-1405, the government did not charge the obvious Arizona crime as the predicate offense.   So, the similarities between this case and *Tello* are clear.   And Tello made the exact same argument Lopez makes:

> Tello argues that the evidence showed only that he intended to pick up a thirteen-year-old girl in California and return to Arizona, where he would engage in sexual activity with her.  Because the government did not plead that Tello could be charged with a criminal act under Arizona law, where the

---

[13] "The criminal indictment alleged that Tello 'could be charged with a criminal offense under California law, namely: Lewd Act Upon a Child Under the Age of 14 Years, a violation of California Penal Code Section 288; Oral Copulation, a violation of California Penal Code Section 288a; and Unlawful Sexual Intercourse with a Person Under the Age of 18 Years, a violation of California Penal Code Section 261.5.'" *Tello*, 600 F.3d at 1165.

> intended sexual activity was to occur, Tello contends that there was insufficient evidence to support his conviction as pleaded. He concludes that his drive to Los Angeles to pick up what he thought was a thirteen[-]year[-]old to take to Arizona for sex does not show a crime under California law.

600 F.3d at 1165. The court did not, however, treat the California predicate offenses listed in the indictment as irrelevant; nor did it find that the evidence obviously supported that Tello was enticing the person he thought was a thirteen-year-old girl to have sex in Arizona in violation of Arizona law, *see id.* at 1165–67, even though, as the Majority points out, the government made this argument in the alternative, *see* Majority at 27.

The *Tello* court, which did not look to the low-hanging fruit (the Arizona offense) that the government could have charged as the predicate offense, understood that it was limited to the California *predicate offenses charged in the indictment*. *Tello*, 600 F.3d at 1165–66. The court correctly examined whether California could properly exercise territorial jurisdiction as to the predicate offenses charged in the indictment, because if not, the conviction could not stand. *See id.* Of course, in so doing, it looked to relevant California territorial jurisdiction statutes to answer that

question.[14]  Because California Penal Code § 778a[15] extends the reach of California's jurisdiction to circumstances where the defendant performs an act in furtherance of his criminal *intent* in California, Tello was properly subject to jurisdiction for the predicate offenses actually charged in the indictment.  *Id.* at 1166–67.  Because, as discussed below, Guam has no comparable jurisdictional statute, *Tello* does not help the government here.[16]

---

[14] The Majority claims that the difference in the scope of the California and Guam territorial jurisdiction statutes is the reason that it addresses, "as a matter of first impression, whether Section 2422(b) requires the Government to charge a predicate offense and prove here that Guam would have had jurisdiction over said predicate offense." Majority at 28 n.6.  But the Majority addresses the wrong question.  The issue presented here is whether, after the grand jury returns an indictment charging a particular predicate offense, the court can thereafter replace that charged offense with a different offense.  This case is not about the abstract inquiry of whether a predicate offense need be charged.

[15] "Whenever a person, with intent to commit a crime, does any act within this state in execution or part execution of that intent, which culminates in the commission of a crime, either within or without this state, the person is punishable for that crime in this state in the same manner as if the crime had been committed entirely within this state." Cal. Penal Code § 778a(a).

[16] The government argues, that *Tello* supports its position because the California jurisdictional statute is supposedly similar to 9 GCA § 1.16(a)(1).  But they are not similar.  California's jurisdictional statute allows prosecution where a defendant performs an act in furtherance of his criminal *intent* within California, whereas Guam's statute allows prosecution only if "the conduct which is an element of the offense or the result which is such an element" occurs off base.  The government cites to nothing in the record to demonstrate that any *element* of the substantive predicate offense—penetration involving a child under fourteen—was contemplated to occur off-base.  Instead, it argues that "Lopez engaged in substantial steps toward the commission of the

The Majority's reliance on *United States v. Shill*, 740 F.3d 1347 (9th Cir. 2014), is similarly unavailing. There, we considered only whether § 2422(b) "should be construed narrowly to preclude prosecution where the predicate 'criminal offense' is a misdemeanor under state law." *Id.* at 1349. We relied on § 2422(b)'s use of the term "any" in the clause "any sexual activity for which any person can be charged with a criminal offense" to hold that there was no textual basis to "exclude misdemeanor conduct from the statute's ambit." *Id.* at 1354. We said nothing, for example, about whether having charged a particular predicate misdemeanor, the government could prove an entirely different predicate misdemeanor. And the Majority cites no case where any court has even addressed the question of whether the government can charge a particular predicate crime but prove an uncharged predicate crime (and I have found no such case). Instead, the Majority attempts to use inapposite cases to reach the conclusion that "Section 2422(b) does not require the Government to allege a specific predicate offense or to prove that the relevant court would

---

§ 2422 offense from off-base." Lopez indeed took substantial steps off-base, but that is irrelevant under 9 GCA § 1.16(a)(1). As Lopez correctly argues in his Reply Brief:

> Here, the emails Lopez sent to "Brit" constituted an element of the attempted enticement charge, but not of the object offense of Guam's First Degree Criminal Sexual Conduct. That statute criminalizes "sexual penetration" where "the victim is under fourteen (14) years of age." 9 GCA § 25.15(a)(1). There is no evidence Lopez attempted to entice "Brit" to commit any element of this offense within Guam's territory; instead, as the Government agrees, to the exten[t] Lopez attempted to entice "Brit" to engage in sexual activity, that sexual activity would have occurred on the federal base, out of the reach of Guam's laws.

have had jurisdiction over the defendant for the commission of such offense." Majority at 29.

Because the Majority asks the wrong question, its answer to that question is irrelevant. The right question is: Can a court amend the indictment returned by the grand jury to excise the charged predicate offense and substitute a different predicate offense. And the correct answer to that question is "no."

The Majority tries to avoid this by wrongly holding that this case "involves, at most, a variance in which the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." Majority at 40 (quotation marks omitted) (quoting *Ward*, 747 F.3d at 1189). But how have the charging terms been left unaltered? As I wrote at the beginning of my dissent, the indictment returned by the grand jury charged Lopez with attempting to "entice[] a person who the defendant believed to be under eighteen years of age[] to engage in sexual activity for which a person can be charged with a criminal offense, to wit: First Degree Criminal Sexual Conduct, in violation of 9 GCA § 25.15(a)(1)." *This is a predicate offense Lopez did not commit.* The indictment, as amended by the Majority, now charges a different predicate offense. And this amendment not only changes the charging terms of the indictment, but changes them materially, as Lopez did not commit the offense with which he was actually charged. *See United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) ("An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." (quoting *United States v. Cusmano*,

659 F.2d 714, 718 (6th Cir. 1981))).[17]  Where an indictment is constructively amended and a conviction is based on the newly amended indictment, that conviction must be reversed.[18] *See Ward*, 747 F.3d at 1189.

This case does not involve an insignificant or harmless "variance." *United States v. Bolzer*, 556 F.2d 948 (9th Cir. 1977), is an instructive variance case.  There, the defendants,

---

[17] The government does not make the argument that no predicate offense need be specified in the indictment.  And here, the indictment did so specify, and it specified a crime for which the defendant could not be convicted.  So it is unnecessary to determine whether the government *could* have omitted the predicate offense (though I note that the indictment here and the indictments in all but one of the Ninth Circuit cases cited by the Majority *do* list predicate offenses).  But even if the Majority is correct, a court would likely order, on motion, a bill of particulars specifying the possible predicate offenses given that a defendant is "entitled to know . . . the theory of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphasis omitted); *see* Fed. R. Crim. P. 7(f); *see also United States v. Mannava*, 565 F.3d 412, 414 (7th Cir. 2009) (illustrating how the government responded to the defendant's motion for a bill of particulars by specifying the predicate offenses).  And in such a case, we would certainly not allow a *post-trial* amendment of the bill to completely change the specified predicate offense or offenses, as it would run contrary to the bill's functions.  *See United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (noting that two functions of the bill of particulars are "to inform the defendant of the nature of the charge[s] against him with sufficient precision to enable him to prepare for trial [and] to avoid or minimize the danger of surprise at the time of trial" (citation omitted)).

[18] The Majority states that "[w]hether the behavior in which Lopez engaged could have been charged under one Guam offense or another is irrelevant to the culpability of his conduct."  Majority at 38.  I agree.  However, in our criminal justice system, even the most "culpable" defendants are not convicted based on what the government *could have* charged; they are convicted based only on what the government *did* charge.

who were charged with armed mail robbery and conspiracy, argued that the conspiracy count should have been dismissed because of a fatal variance. *Id.* at 949. The evidence demonstrated that the defendants had been surveilling a different postal facility than the one described in the indictment. *Id.* at 950. Because the surveillance was "only one of four overt acts alleged to have been committed by the defendants in furtherance of the conspiracy," and because the government presented sufficient evidence of the other overt acts, we held that the variance was harmless. *Id.* at 950–51. Unlike here, the charging terms in the *Bolzer* indictment remained unaltered.

The variance cases the Majority cites are inapposite. In *United States v. Antonakeas*, 255 F.3d 714 (9th Cir. 2001), the defendant claimed that the trial court constructively amended the indictment in response to a jury question. *Id.* at 718–19. The indictment charged conspiracy to distribute cocaine in Hawaii. *Id.* at 718. The court instructed the jury that it could find the defendant guilty even if the defendant did not have knowledge that the drugs would ultimately be sold in Hawaii. *Id.* We first noted that "[a]n indictment is amended when it is so altered as to charge a different offense from that found by the grand jury." *Id.* at 721 (quoting *United States v. Miller*, 471 U.S. 130, 144–45 (1985)). We also quoted *Miller*'s reasoning that the key is whether "the proof" on which the conviction is based "corresponds to an offense that was clearly set out in the indictment." *Id.* (quoting *Miller*, 471 U.S. at 136). We reasoned both that the supposed removal of the Hawaii nexus was in no way essential to the conspiracy offense on which the jury convicted the defendant (indeed the jury was correctly instructed as to the actual elements of conspiracy, *id.* at 718), and that the government did connect the defendant to a Hawaii conspiracy. *Id.* at 722. This case bears no

resemblance to ours, where the Majority is post-hoc amending the predicate offense charged in the indictment (and post-hoc finding sufficient evidence to support its amendment). Indeed, the Majority is doing just what *Miller* says a court cannot do—amending the indictment to charge a different offense from that found by the grand jury. 471 U.S. at 142–43.

*United States v. D'Amelio*, 683 F.3d 412 (2d Cir. 2012), is also not "on all fours with this case." *See* Majority at 39. *D'Amelio* was a § 2422(b) case in which the government was permitted to introduce evidence at trial that the defendant used the internet *and* telephone conversations to communicate with the supposed underage victim, even though the indictment referred only to the internet as a means of communication. 683 F.3d at 414–15.

> The government's proof at trial did not modify an "essential element" of the alleged crime. The essential element at issue is D'Amelio's use of a "facility or means of interstate . . . commerce," 18 U.S.C. § 2422(b), not the particular means that were used. Neither the indictment nor proof at trial showed that D'Amelio committed this crime by means of, for example, use of force, which would have modified an "essential element" of the crime. Whether D'Amelio used the Internet or a telephone makes no difference under the relevant statute . . . .

*Id.* at 422 (first alteration in original) (footnote omitted).

The example provided by the Second Circuit of what *would* be improper—changing "use of a 'facility or means

of interstate . . . commerce'" to "use of force"—is precisely what the Majority has done here.

I agree with the Majority that § 2422(b) allows for a wide range of offenses to serve as predicate offenses. *See* Majority at 24–25. This, however, allows the government a wide range of choices *to present to the grand jury*. And perhaps it allows the government to take the substantial risk of not specifying a predicate offense.[19] But after the grand jury has returned an indictment listing a predicate offense or offenses; absent a superseding indictment, the government is bound by the indictment the grand jury returned.

The Majority labels the predicate offense returned by the grand jury "[g]ratuitous language," and insists that it is "mere surplusage," Majority at 34, despite the fact that the government has never made this argument—not before the district court, not in its briefs, and not at oral argument. The Majority is incorrect. Surplusage is language that "goes beyond alleging elements of the crime." *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986).[20]

---

[19] The Majority states that the holdings of the Sixth and Eleventh Circuits are that "Section 2422(b) does not require proof that the defendant could have been prosecuted under a particular law so long as the jury may reasonably conclude the defendant's communications proposed a criminal sexual act." Majority at 29 n.7. But I have found no case (and the Majority cites none) in which an indictment *has* charged a specific predicate offense or offenses, the government claims to have proved a completely different predicate offense, and the court upholds the conviction.

[20] A court, for example, can exercise its discretion to strike surplusage "to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges." *United*

Section 2422(b) states that "[w]hoever, using . . . any . . . means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so" is guilty of a crime.  Thus, "any sexual activity for which any person can be charged with a criminal offense" is an essential element of § 2422(b).  *See Jenkins*, 785 F.2d at 1392.  The government's specification of "First Degree Criminal Sexual Conduct, in violation of 9 GCA § 25.15(a)(1)" in the indictment gives meaning to this essential element and is therefore both relevant and material to the charged offense.  *Cf. United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988).

*United States v. Garcia-Paz*, 282 F.3d 1212 (9th Cir. 2002), on which the Majority relies, is inapposite.  The defendant was charged with violating 18 U.S.C. § 545— "fraudulently or knowingly import[ing] or bring[ing] into the United States, any merchandise contrary to law." *Garcia-Paz*, 282 F.3d at 1217.  The indictment alleged that Garcia-Paz "did knowingly import and bring into the United States certain merchandise, to wit, marijuana, contrary to law." *Id.* at 1215.  Garcia-Paz was an emergency medical technician and translator in an ambulance that brought both a critically ill patient and approximately 1,000 pounds of marijuana into California from Mexico. *Id.* at 1213.  Garcia-Paz's defense was that while he knew he was being paid to illegally transport "medicine" across the border, he didn't know the ambulance had marijuana. *Id.*  He requested a jury instruction that would have required the jury to find that he

*States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988) (quotation marks and citation omitted).

knowingly imported marijuana (as opposed to merchandise) in order to convict. *Id.* at 1215. The district court refused the instruction, and we affirmed. *Id.* at 1215–17. We found that a plain reading of the indictment showed "that the phrase 'to wit' did not "speak to Garcia-Paz's knowledge, but rather was there to inform the jury what 'merchandise' the government would prove was smuggled." *Id.* at 1215. Thus, the government had to prove that Garcia-Paz knowingly smuggled something that qualified as merchandise under the statute (marijuana so qualified), and separately had to prove that the merchandise was actually transported across the border. *Id.* at 1217. "Consequently, the removal of the reference to marijuana *from the jury instruction* did not alter the charge against Garcia-Paz." *Id.* at 1216 (emphasis added).

The issue in the case was whether the "knowingly" element extended to the marijuana, *i.e.*, whether the indictment "allege[d] that Garcia-Paz had knowledge of the marijuana" such that relieving the government of proving knowledge of marijuana, as opposed to knowledge of merchandise, would alter the indictment. *Id.* at 1215–16. We held it did not.

*Garcia-Paz* is a far cry from this case, including because "any sexual activity for which any person can be charged with a criminal offense" is an element that requires statutes to give it meaning. And the possible predicate offenses have different elements and require different facts to prove those elements, which facts would need to be presented to the grand jury.[21]

---

[21] *Garcia-Paz* also differs from this case because here the jury was specifically instructed that the government must prove beyond a

This case is more akin to *Howard v. Daggett*, 526 F.2d 1388 (9th Cir. 1975) (per curiam), where we held that an indictment for the promotion of prostitution that listed the names of two specific women who had been induced to engage in prostitution could not be altered by jury instructions to allow for a conviction regarding other women. *Id.* at 1390. We explained:

> The grand jury might have indicted appellant in a general allegation, without specifying the women to whom his alleged illegal acts or purposes related. But it did not do so. To allow the jury to consider the evidence respecting the other alleged prostitutes was to allow the jury to convict of a charge not brought by the grand jury. The supplemental instruction constituted an impermissible amendment of the indictment that destroyed the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury.

*Id.* (quotation marks and citation omitted).[22]

---

reasonable doubt a predicate crime that Lopez did not commit, *that is*, "First Degree Criminal Sexual Conduct, in violation of 9 Guam Code Annotated Section 25.15(a)(1)."

[22] *Howard* makes clear that the Majority's claim that "[b]ecause Section 2422(b) does not contain a predicate offense requirement, . . . the indictment's citation to Guam's First Degree Criminal Sexual Conduct statute was mere surplusage" is incorrect. Majority at 34. The statute need not require that a predicate offense be listed in order for the government to be held to what is *actually* charged by the grand jury. In addition, the Majority's claim that Lopez "perpetuated" the complexity

Permitting Lopez's conviction to stand on a predicate offense not charged in the indictment permits the very thing we prohibited in *Howard* as violative of the Fifth Amendment.

## B.

Having first addressed arguments the government never makes, I now move to arguments that the government does make—first, that Guam could have prosecuted a violation of 9 GCA § 25.15(a)(1) here,[23] and second, that "[t]he Guam Offense was properly assimilated."[24] The indictment listed 9 GCA § 25.15(a)(1)[25] as the predicate offense for the

of this case by "failing to seek a bill of particulars" makes no sense. Majority at 35. Since the grand jury specified a particular predicate offense, Lopez had no need to ask a question that the grand jury had already answered.

[23] The Majority never addresses this argument; it states only that Guam could have prosecuted Lopez for the attempt offense discussed above: "Guam could have prosecuted an individual in Lopez's position for an attempt to engage in sexual penetration of a minor based on substantial steps taken within the Territory." Majority at 33.

[24] The Majority sidesteps the government's assimilation argument: "Because Guam could have prosecuted a person in Lopez's position for attempted sexual penetration of a minor, we need not decide whether the Guam offense cited in the indictment could have been assimilated into and prosecuted under federal law." Majority at 36 n.13.

[25] "A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with the victim and . . . the victim is under fourteen (14) years of age . . . ." 9 GCA § 25.15(a)(1). For purposes of this statute, "[s]exual [p]enetration means sexual intercourse, cunnilingus, fellatio, anal intercourse or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." *Id.* § 25.10(a)(9).

§ 2422(b) violation. This offense could properly serve as the predicate offense only if either Guam had the authority to prosecute the completed offense or, if not, the offense can be assimilated under the ACA.

As the Majority correctly states, "[i]t is undisputed that Guam would have lacked jurisdiction to prosecute an offense taking place exclusively within AAFB territory." Majority at 33. It is also undisputed that the planned completed offense of sexual penetration would have occurred on AAFB.[26] With some exceptions that do not apply, Guam allows prosecution only for "conduct which is an element of the offense or the result which is such an element [if it] occurs within [its] Territory." 9 GCA § 1.16(a)(1). Thus, Guam would have had no jurisdiction over the planned predicate offense charged here. While I have found no cases interpreting this Guam provision, other states have interpreted their own jurisdictional provisions, and those cases offer some guidance here.

In Arizona, there is territorial jurisdiction to prosecute an offense "when the 'effect' or 'result' of such crime occurs in [the state]." *State v. Flores*, 188 P.3d 706, 713 (Ariz. Ct.

---

[26] Lopez asked to meet "Brit" on four separate occasions at different locations within AAFB. The first and second invitation involved proposed meetings at the Base Exchange and at an on-base Burger King, neither of which materialized. Lopez then proposed meeting "Brit" at the on-base library. Lopez appeared at the library, waited for some time, and left when "Brit" failed to arrive. Finally, Lopez arranged to meet "Brit" at her supposed on-base residence. [Air Force Office of Special Investigations] agents arrested Lopez when he arrived at the agreed-upon location.

Majority at 6–7.

App. 2008) (noting that if the defendant's "conduct had a direct effect in Arizona, Arizona can assert jurisdiction").[27] Because the defendant's criminal activity in *Flores* "intended to and did direct harm within Arizona,"—the defendant "sought and obtained illegal entry into Arizona, and he subsequently was illegally transported and present within th[e] state"—Arizona could validly exercise territorial jurisdiction. *Id.* at 714; *see also State v. Meyers*, 825 P.2d 1062, 1064–65 (Haw. 1992) (finding it proper to exercise jurisdiction over a threatening call made from California to Hawaii because "a telephone call constitutes conduct in the jurisdiction in which the call is received").[28]

In addition, in interpreting jurisdictional provisions like Guam's, states have held that there is no territorial jurisdiction where no element of the crime is committed within the state. *See, e.g.*, *State v. Sumulikoski*, 110 A.3d 856, 864 (N.J. 2015) (per curiam) (holding that the state lacked jurisdiction to prosecute the offense where all conduct that constituted elements of the offense occurred outside the state and further holding that "status or 'attendant circumstances' cannot provide a basis for jurisdiction");[29] *State v. Wagner*, 596 N.W.2d 83, 87 (Iowa 1999) (finding that Iowa could not exercise territorial jurisdiction over a

---

[27] Arizona authorizes prosecution for "[c]onduct constituting any element of the offense or a result of such conduct [if it] occurs within [the] state." Ariz. Rev. Stat. Ann. § 13-108(A)(1).

[28] Hawaii authorizes prosecution for "conduct or the result [of conduct] which is an element of the offense [if it] occurs within [the] State." Haw. Rev. Stat. § 701-106(1)(a).

[29] New Jersey authorizes prosecution for "conduct which is an element of the offense or the result which is such an element [if it] occurs within this State." N.J. Rev. Stat. § 2C:1–3(a)(1).

convict's escape from custody in another state despite the convict having been originally prosecuted in Iowa and housed at the Iowa State Penitentiary because that was not an element of the escape offense).[30]

Here, neither the effects nor the result of the *charged* predicate offense could support Guam's territorial jurisdiction over that offense because there is no evidence that Lopez attempted to meet "Brit" other than on base, or that penetration was even contemplated at an off-base location. That Lopez initiated communications off base does not mean that Guam could have prosecuted a crime that would clearly have occurred only on base.[31]

Furthermore, Lopez did not engage in (or even contemplate) conduct off-base that could constitute one or more *elements* of First Degree Criminal Sexual Conduct, in violation of 9 GCA § 25.15(a)(1). Guam law requires "the following relevant elements . . . be met: (1) the person engages in sexual penetration with the victim, and (2) the victim is under fourteen (14) years of age." *Guam v. Campbell*, 2006 Guam 14 ¶ 37. Because no sexual penetration occurred here (or was contemplated to occur off base), none of the elements of this charged predicate offense occurred off base (or were contemplated to occur off base). Thus, Guam would have had no territorial jurisdiction over

---

[30] Iowa authorizes prosecution if "conduct which is an element of the offense, or a result which constitutes an element of the offense, occurs within this state." Iowa Code § 803.1(2).

[31] Because again, the predicate crime the indictment specified was not solicitation of a minor, it was penetration of a minor.

the charged predicate offense.[32]  In that way, this case is akin to *Sumulikoski* and *Wagner*.

Because Guam could never have prosecuted Lopez for a violation of 9 GCA § 25.15(a)(1), it is necessary to address whether that provision is assimilated under the ACA.  If assimilated, then there is no defect in the indictment or mismatch between the indictment and the evidence.  Lopez (despite his claims to the contrary) was communicating with someone he believed to be under the age of fourteen.  Lopez was trying to entice this person into an act involving sexual penetration on-base, a place within the Special Maritime and Territorial Jurisdiction of the United States.  Thus, if 9 GCA § 25.15(a)(1) is assimilated, we must reject Lopez's sufficiency argument.

To determine whether the charged Guam offense is assimilated under the ACA, we ask two questions.  First, "[i]s the defendant's 'act or omission . . . made punishable by any enactment of Congress[?]'" *Lewis v. United States*, 523 U.S. 155, 164 (1998) (alteration in original) (emphasis omitted) (quoting 18 U.S.C. § 13(a)).  If the answer to this question is "no," the statute will be assimilated.  *See id.* Second, "[i]f the answer to [the first question] is 'yes,' . . . the court must ask . . . whether the federal statutes that apply to the 'act or omission' preclude application of the state law in question."  *Id.*  Here, courts are concerned with whether the state law's application "would interfere with the achievement of a federal policy," whether it "would effectively rewrite an offense definition that Congress carefully considered," or whether the federal statutes

---

[32] The Majority appropriately concedes this point.  Majority at 28 n.6.

"occupy so much of a field as would exclude use of the particular state statute at issue." *Id.*

With respect to the first inquiry, the government concedes that conduct punishable under 9 GCA § 25.15(a)(1) is also punishable under the federal sexual abuse of a minor statute, 18 U.S.C. § 2243(a).[33] With respect to the second inquiry, the Supreme Court has said that "it seems fairly obvious that the [ACA] will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior." *Lewis*, 523 U.S. at 165. Assimilation will generally be improper "where differences amount only to those of name, definitional language, or punishment." *Id.*

Here, as Lopez points out, Guam and the federal government sought to "punish approximately the same wrongful behavior, [thus] counseling against application of the . . . [Guam] statute through the ACA." *United States v. Rocha*, 598 F.3d 1144, 1150 (9th Cir. 2010). Both statutes target the sexual penetration of minors, and application of both the Guam statute and the federal sexual abuse statutes

---

[33] 18 U.S.C. § 2243(a) provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States . . . knowingly engages in a sexual act with another person who—
>
> (1) has attained the age of 12 years but has not attained the age of 16 years; and
>
> (2) is at least four years younger than the person so engaging;
>
> or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

"would rewrite distinctions carefully considered by Congress and would attempt to fill a gap in the federal enclave law where no gap exists."[34] *United States v. Waites*, 198 F.3d 1123, 1129 (9th Cir. 2000). Moreover, much like in *Rocha* where we observed that assimilation was improper because of the comprehensive nature of the assault statutory scheme at issue, *see* 598 F.3d at 1149–52, child sex offenses are also comprehensively covered by federal statutes. This shows a congressional intent to occupy the field, and thus the Guam statute cannot be assimilated.[35] We recently reached a similar conclusion for similar reasons in holding an Oregon weapon statute (which punished shooting at another person) was not assimilated notwithstanding greater possible punishment, because the conduct was also prohibited by the federal assault statute, and because Congress intended the

---

[34] Guam law punishes "sexual penetration" involving children under the age of fourteen with a minimum sentence of fifteen years and a maximum sentence of life imprisonment. *See* 9 GCA § 25.15(a)(1), (b). Federal law punishes "sexual acts" with children aged between twelve and sixteen with a sentence of up to fifteen years, 18 U.S.C. § 2243(a), and "sexual acts" includes those acts that constitute penetration under Guam law, 18 U.S.C. § 2246(2). Section 2241(c) imposes terms of life imprisonment or imprisonment for thirty years to life when the "sexual acts" are accompanied by force, threat of serious bodily injury or death, or use of drugs rendering the victim unconscious, or when the victim is under twelve years. 18 U.S.C. § 2241(c). But *Lewis* dictates that distinctions in punishment don't trigger assimilation, 523 U.S. at 165, and here, Congress clearly considered the circumstances that warrant higher punishment.

[35] I have not been able to find a single case in which a child sex offense has been charged as an assimilated crime. And, at oral argument, the government's attorney conceded that she was not familiar with any child sex offense being prosecuted under the ACA. Oral Arg. at 23:55.

federal statute to occupy the field.  *See United States v. Do*, 994 F.3d 1096, 1100–02 (9th Cir. 2021).[36]

## II.

Because Lopez did not raise this particular sufficiency challenge below, I agree with the Majority that we review for plain error.  But "plain-error review of a sufficiency-of-the-evidence claim is only 'theoretically more stringent' than the standard for a preserved claim."  *United States v. Flyer*, 633 F.3d 911, 917 (9th Cir. 2011) (citation omitted).[37]  "We say 'theoretically' because, while plain-error review appears more stringent in theory, it is hard to comprehend how a standard can be any more stringent in actuality than that ordinarily applied to sufficiency-of-the-evidence challenges."  *United States v. Cruz*, 554 F.3d 840, 844 (9th Cir. 2009).

"Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights.  If all three conditions are met, we may then exercise our discretion to notice a forfeited error,

---

[36] Lopez argues in the alternative that he is entitled to a new trial on Count 1 because the jury instructions never informed the jury of the actual elements of 9 GCA § 25.15(a)(1).  Lopez never raised this claim below, and affirmatively agreed to the instructions that were given, though as the Majority notes, the government doesn't argue waiver.  *See* Majority at 42 n.14.  I do not need to reach this issue because of the error I find did occur, but I note that the Majority correctly states that "the district court should have instructed the jury on the applicable 'laws of Guam.'"  Majority at 42.

[37] "[I]t is difficult to imagine just what consequences flow from [the] application of the plain error standard or to envision a case in which the result would be different because of the application of one rather than the other of the standards."  *United States v. Cruz*, 554 F.3d 840, 845 (9th Cir. 2009) (citation and alterations omitted).

but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Myers*, 804 F.3d 1246, 1257 (9th Cir. 2015) (quotation marks, alterations, and citation omitted).

The district court erred because First Degree Criminal Sexual Conduct cannot serve as the predicate offense for the reasons discussed above. Therefore, prong one is met.

As to prong two, the error need only be "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993). Because binding case law is consistent and clear that the government is limited to charges listed in the indictment, *see Ward*, 747 F.3d at 1189, and because the indictment does not state a crime that Lopez could have been convicted of in the circumstances here, I believe the error is both clear and obvious. *Cf. Cruz*, 554 F.3d at 851 (finding an error clear and obvious where the government failed to show sufficient evidence of one of the essential elements of the offense). Indeed, as in *Cruz*, "no rational trier of fact could have found that the government proved" the offense charged in the indictment. *See id.*

It is also noteworthy that "we have expressed our reluctance, regardless of the standard of review, to affirm a conviction and send a defendant to prison . . . if the record clearly showed that the evidence was insufficient." *United States v. Garcia-Guizar*, 160 F.3d 511, 517 (9th Cir. 1998) (quotation marks and citation omitted). Here, Lopez stands convicted of the crime with which he was charged by the grand jury, but the evidence was insufficient to convict him of that crime. Indeed, given the undisputed facts, the evidence could never have been sufficient.

"When a conviction is predicated on insufficient evidence, the last two prongs of the [plain-error] test will

necessarily be satisfied . . . ." *Cruz*, 554 F.3d at 845. "A defendant's 'substantial rights,' as well as the 'fairness' and 'integrity' of the courts, are seriously affected when someone is sent to jail for a crime that, as a matter of law, he did not commit." *Id.*

## III.

The grand jury dates to the Assizes of Clarendon in 1166. *Hurtado v. California*, 110 U.S. 516, 529 (1884).

> The grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty; notwithstanding periodic criticism, much of which is superficial, overlooking relevant history, the grand jury continues to function as a barrier to reckless or unfounded charges. Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice. Its historic office has been to provide a shield against arbitrary or oppressive action, by [e]nsuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance.

*United States v. Mandujano*, 425 U.S. 564, 571 (1976) (quotation marks and citation omitted).

In our criminal justice system, "[t]he Fifth Amendment's grand jury requirement establishes the 'substantial right to be tried only on charges presented in an indictment returned by a grand jury.'" *Antonakeas*, 255 F.3d at 721 (quoting *United States v. Miller*, 471 U.S. 130, 140 (1985)). It is entirely within the government's control as to the charges in the indictment it presents to the grand jury for its consideration. The government made its choice here and did not prove the offense the grand jury charged. While the Majority's substantive analysis of the defendant's conduct under Guam law is incorrect, that is not its gravest error. In contravention of the Constitution, it has taken on the role of the prosecutor (in its charging decision) and the grand jury (in performing its mandatory role under the Fifth Amendment). I therefore respectfully dissent.